**NORTH ROYALTON CITY SCHOOL DISTRICT BOARD OF EDUCATION, APPELLEE,**

*v***. CUYAHOGA COUNTY BOARD OF REVISION ET AL., APPELLEES;**

**RISER FOODS COMPANY, APPELLANT.**

**[Cite as *N. Royalton City School Dist. Bd. of Edn. v. Cuyahoga Cty. Bd. of Revision,* 129 Ohio St.3d 172, 2011-Ohio-3092.]**

*Real property taxation — Recent, arm's-length sale — Sale of property was recent and at arm's length, even though sale price was negotiated seven years before sale was consummated.*

(No. 2009-2057 — Submitted June 21, 2011 — Decided June 30, 2011.)

APPEAL from the Board of Tax Appeals, No. 2006-M-1421.

————————————

**Per Curiam.**

**{¶ 1}** In this appeal, the property owner, Riser Foods Company ("Riser"), challenges a decision of the Board of Tax Appeals ("BTA") in which the BTA determined the true value of Riser's real estate to be $450,000 for tax year 2005, rather than $73,700 as determined by the county auditor and the Cuyahoga County Board of Revision ("BOR"). The BTA's determination of value is predicated on the price paid for the property in 2005 in accordance with a buy-out option agreed to by the parties in a ground lease. The ground lease was entered into on December 16, 1998, and ownership was transferred in December 2005.[1] The BTA regarded the buy-out-option price as a recent, arm's-length sale

---

1. A "ground lease" is a "lease that grants the right to use and occupy land." American Institute of Real Estate Appraisers, The Dictionary of Real Estate Appraisal (1984) 146. In the present case, the contract is captioned "ground lease," but it is actually a ten-year lease with a sale to the lessee to occur at the end of the lease. The contract includes a buy-out option exercisable at any time by the seller.

price that furnished the criterion of value for the property as of January 1, 2005, pursuant to R.C. 5713.03.

{¶ 2}   On appeal, Riser advances several reasons why the $450,000 buy-out-option price does not reflect a recent, arm's-length sale price under R.C. 5713.03.   Riser argues that the school board had the burden of proving that the sale price was probative of value, both because it was the appellant at the BTA and because the sale was a transaction between "related parties."   Riser contends that the fact that seven years lapsed between the 1998 contract and the 2005 transfer of the property shows that the sale was not recent, and Riser contests the characterization of the sale as an open-market sale and a voluntary sale, urging that it did not qualify as an arm's-length transaction.

{¶ 3}   Riser's arguments are not well taken, and we therefore affirm the decision of the BTA.

## I.  Facts

{¶ 4}   The auditor assigned a value of $73,700 to the property for 2005. The school board filed a complaint against that valuation on March 28, 2006, seeking an increase to $450,000 in true value based on a sale of the property in December 2005.   A hearing was held before the BOR on August 23, 2006, at which the school board presented the conveyance-fee statement showing a transfer from Gregory and Vincenza Caniglia to Riser for a consideration of $450,000.

{¶ 5}   In response, Riser presented a so-called ground lease dated December 16, 1998.   Riser argued that the sale was neither recent nor at arm's length, given that the price was specified in a buy-out option as part of the 1998 ground lease and that the sale was part of a "like-kind exchange" under Section 1031, Title 26, U.S.Code.   For its part, the school board argued that the sale price reflected on the conveyance-fee statement should be adopted as the value of the property for 2005 and urged that the statements regarding value made by counsel

2

on behalf of Riser were not admissible, because the school board did not have an opportunity to cross-examine the client.

{¶ 6} The BOR retained the auditor's valuation, and the school board appealed to the BTA. At the BTA, a stipulation was filed through which Riser, the BOR, and the school board agreed to the admissibility, the authenticity, and the truth of the facts contained in the ground lease. The BTA held no hearing, and the parties reasserted their positions to the BTA by brief.

{¶ 7} The ground lease presented to the BOR[2] is a contract dated December 16, 1998, and executed on that date between Gregory and Vincenza Caniglia as landlord and Giant Eagle, Inc., as tenant.[3] It contemplated adapting the .501-acre site into a parking area for a neighboring Giant Eagle store. The lease stated a ten-year term and specified a rent of $34,600 per lease year for the first five years and $37,500 per year for the second five years. Throughout the term of the lease, the tenant was responsible for repairs, utilities, and taxes. The contract conferred on the landlord a "buy-out option," under which it could require the tenant to purchase the property for $400,000 during the first five years of the contract or $450,000 during the second five years. Another contract provision provided that if the buy-out option was not exercised during the term of the lease, the landlord was to sell and the tenant would buy the property for $450,000 at the end of the lease.

---

2. The stipulation filed at the BTA recites that the ground lease is attached, but in the record certified by the BTA, that copy of the ground lease is missing. We therefore rely on the copy of the ground lease presented to the BOR, which we assume is the same.

3. Also attached to the letter were a December 18, 1998 Memorandum of Ground Lease that was recorded on January 5, 1999, and an Assignment and Assumption of Relinquished Property dated December 29, 2005, documenting an assignment from the Caniglias to Surety 1031 Exchange, Inc. These documents were not subject to the stipulation at the BTA, and in a footnote the BTA concluded that Riser Foods was an assignee of Giant Eagle, Inc.'s interest in the ground lease. In this opinion, the term "Riser" refers to Riser Foods or to Giant Eagle, Inc., as appropriate given the context.

**{¶ 8}** On October 13, 2009, the BTA issued its decision. The BTA considered and rejected several arguments advanced by Riser that the $450,000 purchase price did not furnish the criterion of value of the property pursuant to R.C. 5713.03. First, the BTA rejected the contention that the purchase had not been voluntary, or had occurred under duress. Although the sale was obligatory under the terms of the 1998 ground lease, the BTA saw no reason to conclude that the underlying lease agreement itself was anything but voluntary. Second, the BTA rejected the contention that the sale was not arm's-length because of the overarching relationship between the parties created by the ground lease. Here, the BTA found that the parties had acted in their own best interest, and it treated the arm's-length character of the underlying lease agreement as dispositive of the arm's-length character of the sale. Third, the BTA rejected the contention that because the sale was a like-kind-exchange sale pursuant to Section 1031, Title 26, U.S.Code, it was not an arm's-length sale. In this regard, the BTA relied upon a previous decision in which the presence of a like-kind exchange did not prevent the use of the sale price as the criterion of value.

**{¶ 9}** Finally, the BTA rejected the contention that because the buy-out-option price had been agreed to in 1998, the actual resulting sale in 2005 was not "recent." Here, the BTA relied on one of its previous decisions and on the general preference of the law for using a sale price.

**{¶ 10}** Because it found that Riser had not impugned the recency or arm's-length character of the sale, the BTA used the sale price of $450,000 as the criterion of value of the property as of January 1, 2005. Riser timely appealed, and we now affirm.

## II. Analysis

**{¶ 11}** R.C. 5713.03 states the general rule that when a "tract, lot, or parcel has been the subject of an arm's length sale between a willing seller and a willing buyer within a reasonable length of time, either before or after the tax lien

date, the auditor shall consider the sale price * * * to be the true value for taxation purposes." Under this provision, " 'the uniform rule [in real property taxation] is that property should be valued in accordance with an actual sale price where the criteria of the recency and the arm's-length character of the sale are satisfied.' " *Woda Ivy Glen Ltd. Partnership v. Fayette Cty. Bd. of Revision*, 121 Ohio St.3d 175, 2009-Ohio-762, 902 N.E.2d 984, ¶ 21, quoting *Cummins Property Servs., L.L.C. v. Franklin Cty. Bd. of Revision*, 117 Ohio St.3d 516, 2008-Ohio-1473, 885 N.E.2d 222, ¶ 25. Moreover, when a school board seeks an increase in property valuation, its presentation of basic evidence of the sale and the sale price such as the conveyance-fee statement usually suffices to place a burden on the owner to rebut that the sale price is the value. *FirstCal Indus. 2 Acquisitions, L.L.C. v. Franklin Cty. Bd. of Revision*, 125 Ohio St.3d 485, 2010-Ohio-1921, 929 N.E.2d 426, ¶ 23, 25. In such cases, the "basic documentation of [the] sale invokes a 'rebuttable presumption' that 'the sale has met all the requirements that characterize true value.' " *FirstCal* at ¶ 24, quoting *Cincinnati School Dist. Bd. of Edn. v. Hamilton Cty. Bd. of Revision* (1997), 78 Ohio St.3d 325, 327, 677 N.E.2d 1197.

**{¶ 12}** Although presenting documentation of the sale price generally raises the presumption that the sale price reflects the value of the property, that presumption can be rebutted if the recency or the arm's-length character of the sale is successfully challenged. *Cummins Property Servs.* at ¶ 13. And the rebuttal may lie within the documentation associated with the sale. See *Cincinnati School Dist. Bd. of Edn. v. Hamilton Cty. Bd. of Revision*, 127 Ohio St.3d 63, 2010-Ohio-4907, 936 N.E.2d 489, ¶ 5, 21 (settlement statement showed that sale involved a foreclosure sale by the Department of Housing and Urban Development, which called into question the voluntary character of the sale).

**{¶ 13}** In the present case, the dispute centers on whether the December 2005 sale price that was negotiated as part of the December 1998 ground lease

qualifies as the price in a recent, arm's-length transaction for purposes of R.C. 5713.03.

*A. As the opponent of using the sale price as the criterion of value,*

*Riser had the initial burden to show that the 2005 sale*

*was either not recent or not at arm's length*

**{¶ 14}** At the outset, we address Riser's third proposition of law, under which Riser contends that the BTA should have put the burden on the school board to "establish that the transfer was probative evidence of value despite the fact that the sale was negotiated seven years before [the] lien date and by related parties." Riser predicates this argument on the fact that the BOR had rejected the school board's contention that the sale price established the value of the property.

**{¶ 15}** It is true that the appellant at the BTA typically bears the burden to establish a different valuation from the one determined below, *Colonial Village, Ltd. v. Washington Cty. Bd. of Revision*, 123 Ohio St.3d 268, 2009-Ohio-4975, 915 N.E.2d 1196, ¶ 23. But when the issue is whether a proffered sale price should be used to value the property, the burden at the BTA is usually on the same party who bore that burden at the BOR: the opponent of using the sale price. *Cummins Property Servs.*, 117 Ohio St.3d 516, 2008-Ohio-1473, 885 N.E.2d 222.

**{¶ 16}** That burden does not shift at the BTA even if the BOR decided not to use the sale price as the criterion of value. In *Worthington City Schools Bd. of Edn. v. Franklin Cty. Bd. of Revision*, 124 Ohio St.3d 27, 2009-Ohio-5932, 918 N.E.2d 972, the board of revision had rejected the sale price as the value of the property at issue. Id. at ¶ 11. The property owner contended that the board of education had the burden at the BTA to show that the proposed sale price was indicative of value. Id. at ¶ 27. But we rejected that contention, holding that "the BTA was justified in viewing the conveyance-fee statement and the deed that the school board had presented to the BOR as constituting a prima facie showing of value." Id. at ¶ 28. By the same token, the conveyance-fee statement on which

the school board relies in the present case formed an adequate basis for the BTA to find a recent, arm's-length sale, subject to rebuttal by Riser.

{¶ 17} Thus, the burden at the BTA lay on Riser to show why the price reported for the 2005 sale did not constitute the criterion of value for the property.

*B. Riser failed to negate the recency of the sale*

{¶ 18} Under its first proposition of law, Riser focuses primarily on the contention that "the instant matter does not involve a recent, arm's-length sale because the sale price was agreed upon seven years prior to the lien date and [was] thus not reflective of current market conditions as of January 1, 2005." As a result, according to Riser, the sale did not occur "within a reasonable length of time, either before or after the tax lien date" as required by R.C. 5713.03 for using the sale price as the true value. At oral argument, Riser distinguished between the "sale" of the property and the "transfer" that occurs pursuant to, or as a part of, the "sale." According to Riser, the recency of the sale is determined based on the time of the negotiation and execution of the contract (here, December 1998), not on the date the title to the property is transferred (here, December 2005).

{¶ 19} Riser is mistaken. Although the sale price in this case was negotiated in 1998, the sale was not consummated until 2005. R.C. 5713.03 does not require that an arm's-length sale price be *negotiated* within a reasonable time before or after the lien date; it is the time of *the sale itself* that the "reasonable time" language of the statute addresses. Whether "sale" is defined as the "transfer of property or title for a price," or as the "agreement by which such a transfer takes place," Black's Law Dictionary (9th Ed.2009) 1454, the transfer is an essential element and the sale has not occurred until the property has been transferred.

{¶ 20} We hold that Riser's position cannot be reconciled with our analysis of the meaning of "recent" in *HIN, L.L.C. v. Cuyahoga Cty. Bd. of Revision*, 124 Ohio St.3d 481, 2010-Ohio-687, 923 N.E.2d 1144. In *HIN*, the

court confronted a situation in which two sales of a property had occurred close to the tax-lien date, one before and one after that date. After determining that R.C. 5713.03 required that the sale closest to the lien date be presumed to be indicative of the property's value, the court considered which element in the sale transaction should determine the point in time that each of the sales had occurred for purposes of applying the statute. Id. at ¶ 20-23. The court concluded that the "auditor should use the date that the real property conveyance-fee statement is filed in the auditor's office as the sale date of the property" under R.C. 5713.03. Id. at ¶ 24. In so holding, the court specifically rejected the contention that the time the sale price was negotiated was a better date to use in determining the recency of the sale. Id. at ¶ 22. The court chose the date that the conveyance-fee statement was filed because by law, the auditor must be informed about the sale as an event affecting the value of the property; indeed, the statutes require the filing of the conveyance-fee statement in part so that the auditor has notice of the sale for tax-valuation purposes.

{¶ 21} Under *HIN, L.L.C.*, December 29, 2005, is the date of the sale in this case. Because the sale occurred within a year after the tax-lien date, and because Riser offered no evidence of a change in market conditions between the lien date and the filing of the conveyance-fee statement, the sale was "recent" for purposes of R.C. 5713.03.

{¶ 22} In so holding, we do not mean to say that evidence of market change between the date the sale price was negotiated and the date the sale was consummated or a change to the property itself would never be relevant to whether the sale price constitutes the value of the property under R.C. 5717.03. However, such evidence is relevant to the voluntary character of the sale, which is discussed below, rather than to the sale's recency.

**{¶ 23}** For the foregoing reasons, Riser failed to show that the December 2005 sale was not within a reasonable time after the January 1, 2005 tax-lien date for tax-valuation purposes.

*C. Riser did not show that the long-standing contractual obligation to purchase made the sale involuntary or that a lack of open-market elements was significant*

**{¶ 24}** An arm's-length transaction possesses three primary characteristics: it is " 'voluntary*, i.e.*, without compulsion or duress; it generally takes place in an open market; and the parties act in their own self-interest.' " *Strongsville Bd. of Edn. v. Cuyahoga Cty. Bd. of Revision*, 112 Ohio St.3d 309, 2007-Ohio-6, 859 N.E.2d 540, ¶ 13, quoting *Walters v. Knox Cty. Bd. of Revision* (1989), 47 Ohio St.3d 23, 25, 546 N.E.2d 932. Under Riser's second proposition of law, Riser asserts that the 2005 sale was not voluntary, because under the 1998 ground lease, the "parties were compelled to comply with the buy-out provisions in the lease when the option was exercised, despite the fact that the buy-out price was determined in 1998." Significantly, Riser does not argue that the 1998 contract itself was the product of compelling business circumstances. To this contention of duress Riser adds that "the transfer did not take place on the open market." Neither of these contentions establishes legal error in the BTA's decision.

1.  Riser did not prove duress

**{¶ 25}** As noted, a sale must be voluntary to be at arm's-length, *Strongsville* at ¶ 13, and R.C. 5713.03 underscores that requirement by demanding that the sale occur between "a willing seller and a willing buyer." In essence, Riser asserts that the contractual obligation to purchase under the ground lease negates the voluntary element and reflects duress.

**{¶ 26}** Of course the contractual obligation to purchase does not establish duress as a general matter. Most sales occur pursuant to a contract, and the mere

fact that the parties obligate themselves before actually transferring the property does not negate the voluntary character of the sale or establish that the sale did not occur on an open market.

**{¶ 27}** What makes the present case atypical is the duration of the sales contract—i.e., the unusual length of time between the agreement on the sale price and the consummation of the sale. Riser argues that the longer the lapse of time between the negotiation of a sale price and the consummation of the sale, the more likely it is that the character of the property or the market for that property has changed. See *Quarto Mining Co. v. Litman* (1975), 42 Ohio St.2d 73, 87, 71 O.O.2d 58, 326 N.E.2d 676 (the owner of mineral rights and accompanying option to purchase was entitled to compel the sale of some of the surface land, but the price agreed on decades before had to be adjusted to reflect current market value). Riser proposes that the court adopt a six-year bright-line rule, under which a lapse of six years between the execution of a sales contract and the tax-lien date would raise a presumption that the sale price does not reflect true value.

**{¶ 28}** Although the time between the 1998 ground lease and the 2005 sale is lengthy, the record does not suggest any frustration of contractual expectations on the part of either party to the 1998 ground lease. That agreement expressly provided the purchaser with the opportunity to develop the property as a parking area for its store. Nor has Riser presented any evidence of changes in market conditions from 1998 to 2005 that affected the property or changes to the property during that time that would indicate that the contract price does not reflect the property's value. Because the 1998 contract contemplated the adaptation of the property as a parking lot, and because that development apparently occurred, there is no basis for concluding that the agreed price does not reflect the property's value.

2. The lack of elements of an open-market sale did not negate the
arm's-length character of the sale

{¶ 29} As for the open-market character of the sale, we have held that an arm's-length transaction is one that " '*generally* takes place in an open market.' " (Emphasis added.) *Strongsville*, 112 Ohio St.3d 309, 2007-Ohio-6, 859 N.E.2d 540, ¶ 13, quoting *Walters*, 47 Ohio St.3d at 25, 546 N.E.2d 932. The case law does not condition character of a sale as an arm's-length transaction on whether the property was advertised for sale or was exposed to a broad range of potential buyers. See *Walters* at 26 (Douglas, J., concurring in judgment only) (distinguishing "private sale" transactions from open-market sales and asserting that "[p]rivate sale transactions which are at arm's length occur every day").

{¶ 30} After *Walters*, the BTA in a long line of cases has correctly applied the definition of arm's-length transaction to "private sales," i.e., sales that do not bear the indicia of open-market transactions.[4] Although the presence of open-market elements definitely militates in favor of finding a transaction to have been at arm's length, the BTA decisions establish that their absence does not necessarily negate the arm's-length character of the transaction.

{¶ 31} As a result, the arm's-length character of the sale provision of the ground lease is not impugned by the fact that the seller may not have solicited offers from purchasers other than the nearby Giant Eagle, which wanted to use the property as a parking lot.

*D. Riser failed to present a specific argument in support of its contention that the seller and buyer under the ground lease should be deemed related parties*

{¶ 32} Riser also challenges the arm's-length character of the sale by characterizing the landlord-seller (the Caniglias) and the tenant-buyer (Riser)

---

4. See, e.g., *Al Gammarino v. Hamilton Cty. Bd. of Revision* (Oct. 7, 2008), B.T.A. No. 2006-A-1711, 2008 WL 4561471, *3-4; *DiVincenzo v. Lake Cty. Bd. of Revision* (Aug. 26, 2008), BTA Nos. 2006-A-1107 and 2007-A-1514, 2008 WL 3999500, *4-5; *Caleb & Joshua, L.L.C. v. Franklin Cty. Bd. of Revision* (June 1, 2007), BTA No. 2006-A-480, 2007 WL 1650691, *4; *Beatley v. Franklin Cty. Bd. of Revision* (June 18, 1999), BTA Nos. 97-M-262 and 97-M-263, 1999 WL 416995, *5; *MACQ, Inc. v. Marion Cty. Bd. of Revision* (Sept. 11, 1998), BTA No. 96-K-1457, 1998 WL 637991, *3; *Columbus Bd. of Edn. v. Franklin Cty. Bd. of Revision* (Feb. 16, 1990), BTA No. 88-C-1105, 1990 WL 35143, *5.

under the ground lease as "related parties." Although Riser's argument in support of this contention is vague, Riser does assert that the seller and buyer were related because they were landlord and tenant under the ground lease. Because the buyer and seller were related, Riser argues, the $450,000 sale price was not the result of an arm's-length transaction for purposes of R.C. 5713.03. Riser argues that the relationship proves that the transaction was not an arm's-length sale, or at a minimum, shifts the burden back to the school board to show that the sale price agreed to by the related parties reflected the property's true value. Either way, Riser would prevail, because the school board has not introduced evidence of the value beyond the conveyance-fee statement.

{¶ 33} As already noted, one primary characteristic of an arm's-length sale is that the parties act in their own self-interest. *Strongsville*, 112 Ohio St.3d 309, 2007-Ohio-6, 859 N.E.2d 540, ¶ 13. The allegation that the parties to a sale are related bears on whether they are self-interested for purposes of R.C. 5713.03. That is so because related parties may be pursuing the identical interest of common owners rather than acting as separately interested, typically motivated actors in the marketplace. See *Columbus Bd. of Edn. v. Franklin Cty. Bd. of Revision* (Jan. 18, 1990), Franklin App. No. 89AP-448, 1990 WL 2926, *3 ("The term 'arm's-length transaction' connotes more than just lack of compulsion on the part of the buyer and seller. It means that the willing parties have disinterested interests, *i.e.*, that they stand separate from each other"). Although in a given instance " 'related parties can and do effect transfers at fair market prices,' " a sale transacted between related parties should not qualify as the criterion of value without an affirmative demonstration that the price actually reflects fair-market value in spite of the relationship of the parties. *Shiloh Automotive, Inc. v. Levin,* 117 Ohio St.3d 4, 2008-Ohio-68, 881 N.E.2d 227, ¶ 30, quoting the BTA. In *Shiloh*, this court held that the sale price of personal property from one related party to another was properly disregarded when the proponent of using the sale

price "introduced no evidence outside the purchase price to support its claim that the purchase price represented the true value of the assets acquired." Id. As the Tenth District has explained, "[c]losely related parties transfer property between themselves for various reasons, and the sale price frequently is not freely negotiated but, rather, is based upon factors between the parties not connected with the value of the property being transferred." *Columbus Bd. of Edn.*, *3.

{¶ 34} Do the parties to the ground lease in this case qualify as related parties with respect to the sale? Beyond the bare reference to the landlord-tenant aspect of the ground lease, Riser has offered no explanation for why the parties should be considered related. Absent such an explanation, we regard this issue as having been waived, and we decline to address it. See *Util. Serv. Partners, Inc. v. Pub. Util. Comm.*, 124 Ohio St.3d 284, 2009-Ohio-6764, 921 N.E.2d 1038, ¶ 53 (although appellant asserted a takings claim, it effectively waived that point by supplying "[n]o argument * * * regarding whether the relevant case law, applied to the facts of this case, justifies a decision in [the appellant's] favor").

### III. Conclusion

{¶ 35} For the reasons set forth, we reject Riser's contentions and find that the BTA acted reasonably and lawfully when it adopted the sale price as the value of the property. We therefore affirm the decision of the BTA.

Decision affirmed.

O'CONNOR, C.J., and PFEIFER, LUNDBERG STRATTON, O'DONNELL, LANZINGER, CUPP, and MCGEE BROWN, JJ., concur.

_____

Britton, Smith, Peters & Kalail Co., L.P.A., and Karrie M. Kalail, for appellee North Royalton City School District Board of Education.

Siegel, Siegel, Johnson & Jennings Co., L.P.A., J. Kieran Jennings, and Jason P. Lindholm, for appellant.

_____