[Cite as *Cincinnati Trophy, L.L.C. v. Norwood City School Dist. Bd. of Edn.*, 2013-Ohio-5387.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| CINCINNATI TROPHY, LLC, | : | APPEAL NO. C-120806 |
| | | TRIAL NO. 2009-Q-2922 |
| Plaintiff-Appellant, | : | |
| | | *O P I N I O N.* |
| vs. | : | |
| | | |
| BOARD OF EDUCATION OF THE | : | |
| NORWOOD CITY SCHOOL DISTRICT, | | |
| | : | |
| Defendant-Appellee, | | |
| | : | |
| and | | |
| | : | |
| HAMILTON COUNTY AUDITOR, et al., | | |
| | : | |
| Defendants. | : | |

Civil Appeal From: Ohio Board of Tax Appeals

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: December 11, 2013

*Thomas R. Schuck* and *Nicholas J. Pieczonka*, for Plaintiff-Appellant,

*Gary T. Stedronsky*, for Defendant-Appellee.

Please note: this case has been removed from the accelerated calendar.

**DeWine, Judge.**

{¶1}     This is an appeal by a taxpayer from a decision of the Ohio Board of Tax Appeals ("BTA") determining the value of real property.  In the proceeding below, the BTA valued the subject property based upon a sale of that property that occurred some 20 months prior to the tax lien date.  Because we find that the BTA's decision is not unreasonable or unlawful, we affirm the judgment below.

I.

{¶2}     On May 4, 2006, Cincinnati Trophy, LLC, ("Trophy") purchased 14 parcels of property located in Norwood for $100,045,000.  The Hamilton County Auditor determined the value of the property for tax year 2008, allocating the total purchase price to the parcels pro rata based upon the previous values of the parcels in his records.  Trophy filed a complaint seeking a reduction in valuation for eight of the parcels, and the Board of Education for Norwood City School District ("Norwood") counter-complained, seeking to impose the auditor's valuation.

{¶3}     At a hearing before the Hamilton County Board of Revision ("BOR"), Trophy presented the testimony and reports of Bradley Plummer, who performed an appraisal on each of the eight subject properties.  The subject properties consist of a retail shopping center, three office buildings, and four "flex" properties, which can accommodate both office and industrial operations.  In his appraisals, Mr. Plummer relied primarily on the income approach to value, basing his calculations on the net operating income of the subject property and the overall capitalization rate, which is derived from sales data of other similar properties.  He also utilized the sales comparison approach, evaluating the recent sales prices of properties similar in type to the subject properties.  The BOR adopted the value put forth by Mr. Plummer.  It

2

reduced the combined value of the eight parcels from $68,851,180 to $53,885,000, a reduction of approximately 22 percent.

{¶4} Norwood appealed to the BTA. Counsel for the Hamilton County Auditor waived oral argument before the BTA. In a letter to the BTA, Norwood's counsel advised that it also wished to waive oral argument, and stated that it had inquired of counsel for Trophy as to whether Trophy would consent to submitting the matter on the record, but had not received a response. Noting that it had received no objection from Trophy, the BTA ordered the matter submitted on the briefs.

{¶5} The BTA issued a written decision reversing the BOR. It found insufficient evidence to rebut the recency of the May 2006 sale of the subject parcels. Because there had been a recent arm's-length sale, the BTA held it was unable to consider Mr. Plummer's appraisal opinions. Accordingly, it remanded the matter to the BOR for allocation of the bulk sales price to the subject parcels. This appeal followed.

{¶6} Trophy alleges two assignments of error. The first is that the BTA failed to apply the proper burden of proof below, and the second is that its decision is not supported by the record.

II.

{¶7} A decision of the BOR is not afforded a presumption of validity, and in reviewing such a decision, the BTA has a duty to independently weigh and evaluate the evidence and arrive at its own conclusion. *Vandalia-Butler City Schools Bd. of Edn. v. Montgomery Cty. Bd. of Revision*, 130 Ohio St.3d 291, 2011-Ohio-5078, 958 N.E.2d 131, ¶ 13; *Hilliard City Schools Bd. of Edn. v. Franklin Cty. Bd. of Revision*, 128 Ohio St.3d 565, 2011-Ohio-2258, 949 N.E.2d 1, ¶ 17.

{¶8} Our standard of review of a BTA decision is governed by R.C. 5717.04, which provides:

3

If upon hearing and consideration of such record and evidence the court decides that the decision of the board appealed from is reasonable and lawful it shall affirm the same, but if the court decides that such decision of the board is unreasonable or unlawful, the court shall reverse and vacate the decision or modify it and enter final judgment in accordance with such modification.

The Supreme Court has explained that the fair market value of property for tax purposes is a question of fact, and a BTA decision about valuation should not be disturbed unless the record affirmatively indicates that the decision is unreasonable or unlawful. *See, e.g., Sapina v. Cuyahoga Cty. Bd. of Revision*, 136 Ohio St.3d 188, 2013-Ohio-3028, 992 N.E.2d 1117, ¶ 15; *Hilliard* at ¶ 17. A reviewing court should not reverse the BTA's determination on credibility of witnesses and weight given to their testimony absent an abuse of discretion. *Olentangy Local Schools Bd. of Edn. v. Delaware Cty. Bd. of Revision*, 125 Ohio St.3d 103, 2010-Ohio-1040, 926 N.E.2d 302, ¶ 15. However, the reviewing court should "not hesitate to reverse a BTA decision that is based on an incorrect legal conclusion." *Hilliard* at ¶ 17.

### III.

{¶9} In its first assignment of error, Trophy argues that the BTA applied the wrong burden of proof. At the time of the tax lien date of January 1, 2008, R.C. 5713.03 provided that:

In determining the true value of any tract, lot, or parcel of real estate under this section, if such tract, lot, or parcel has been the subject of an arm's length sale between a willing seller and a willing buyer within a reasonable length of time, either before or after the tax lien date, the

4

auditor **shall** consider the sale price of such tract, lot, or parcel to be the true value for taxation purposes.[1]

(Emphasis added.) Thus, a recent, arm's-length sale reflects the value of the property, and rebuttal is limited to challenging the elements of recency and arm's-length character. *See Berea City School Dist. Bd. of Edn. v. Cuyahoga Cty. Bd. of Revision*, 106 Ohio St.3d 269, 2005-Ohio-4979, 834 N.E.2d 782; *N. Royalton City School Dist. Bd. of Edn. v. Cuyahoga Cty. Bd. of Revision*, 129 Ohio St.3d 172, 2011-Ohio-3092, 950 N.E.2d 955. The initial burden on the proponent of the sale price is slight and will be met if the sale appears on its face to be recent and conducted at arm's length. *Cummins Property Servs., LLC, v. Franklin Cty. Bd. of Revision*, 117 Ohio St.3d 516, 2008-Ohio-1473, 885 N.E.2d 222, ¶ 41.

{¶10} Trophy contends that because Norwood appealed the BOR's decision, it had the burden of proof before the BTA. While it is true that the appellant typically bears the burden of challenging the valuation determined below, "when the issue is whether a proffered sale price should be used to value the property, the burden at the BTA is usually on the same party who bore that burden at the BOR: the opponent of using the sale price." *N. Royalton* at ¶ 15. Because a recent, arm's-length sale constitutes prima facie evidence of property value, the opponent of the sale price has the burden even if the BOR rejected the sale price below. *N. Royalton* at ¶ 15-16, quoting *Worthington City Schools Bd. of Edn. v. Franklin Cty. Bd. of Revision*, 124 Ohio St.3d 27, 2009-Ohio-5932, 918 N.E.2d 972, ¶ 28. Accordingly, the burden before the BTA was

---

[1] The statute has since been changed. It now provides: "In determining the true value of any tract, lot, or parcel of real estate under this section, if such tract, lot, or parcel has been the subject of an arm's length sale between a willing seller and a willing buyer within a reasonable length of time, either before or after the tax lien date, the auditor **may** consider the sale price of such tract, lot, or parcel to be the true value for taxation purposes." (Emphasis added.)

on Trophy to show why the 2006 sale price "did not constitute the criterion for value of the property." *N. Royalton* at ¶ 17. The first assignment of error is overruled.

IV.

{¶11}   We next consider whether the BTA acted unreasonably or unlawfully in finding that Trophy failed to demonstrate that the 2006 transaction did not constitute a "recent, arms-length sale."

{¶12}   Trophy's primary argument is that the sale was not "recent" because market conditions changed between the May 4, 2006 sale date and the January 1, 2008 tax lien date. It challenges the BTA's decision in three primary respects: it argues that (1) the BTA failed to properly consider changes in the financing market for commercial property, (2) the BTA incorrectly found that Trophy's appraiser failed to adjust "comparable" property values based upon the asserted declining market, and (3) the BTA failed to appropriately consider the effect of the like-kind exchange.

{¶13}   Recency encompasses temporal proximity to the date of the sale, as well "all factors that would, by changing with the passage of time, affect the value of the property." *Cummins*, 117 Ohio St.3d 516, 2008-Ohio-1473, 885 N.E.2d 222, at ¶ 35.

{¶14}   Here, 20 months elapsed between the sale and the tax lien date. Such a span does not by itself demonstrate that the sale was not recent. For example, in one case, the Ohio Supreme Court found that a sale occurring 21 months after the tax lien was recent within the meaning of the statute. *Lakota Local School Dist. Bd. of Edn. v. Butler Cty. Bd. of Revision*, 108 Ohio St.3d 310, 2006-Ohio-1059, 843 N.E.2d 757. In another case, the Ohio Supreme Court found that a sale 20 months prior to the tax lien date met the recency requirement. *Bd. of Edn. of the Worthington City Schools v. Franklin Cty. Bd. of Revision*, 129 Ohio St.3d 3, 2011-Ohio-2316, 949 N.E.2d 986. And, in another case, the Supreme Court held that evidence challenging the

presumption of recency for a sale occurring over two years prior to the tax lien date was admissible. *New Winchester Gardens v. Franklin Cty. Bd. of Revision*, 80 Ohio St.3d 36, 684 N.E.2d 312 (1997), *overruled in part on other grounds* in *Cummins* at ¶ 25. The *New Winchester* court further explained the rate of change in the market was "[o]ne of the factors" to be considered in the recency analysis. *Id.* at 44. Thus, "[i]f the market is changing rapidly, then the selling price will not be the best evidence of true value for as long a period of time as when the market is not changing or changing very slowly." *Id.*

{¶15} While Trophy's primary argument on appeal focuses on changed market conditions between the sale date and the tax lien date, little evidence on this point was submitted below. Trophy's argument about changed market conditions is based almost exclusively on a single exhibit. The source of the exhibit is not identified, and only a single page was submitted of what would appear to be a 16-page document. The exhibit seems to show "the spread" between the yield of ten-year treasury bonds and Commercial Mortgage Backed Securities ("CMBS") rated BBB between February 7, 1997, and January 4, 2008. It depicts an increase in this spread beginning in about February of 2006, and generally increasing through the end of 2007. Mr. Plummer testified that interest rates spreads drive the purchase of institutional-grade properties and that, as a result of the widened spread, "the cash flow from this property couldn't support anywhere near the value paid in May 2006."

{¶16} The BTA considered Mr. Plummer's testimony and the exhibit, but found it to be unpersuasive. The BTA noted that it had consistently rejected the notion that property values must rise or fall based on historical trends. Moreover, it found that the argument did not address the impact that local market factors—such as "geography, mortgage rates, supply and demand"—may have had on property value.

7

{¶17}  We note also that while the rate spread sheet did present some evidence of changing market conditions, it was hardly dispositive.  At most, it demonstrated that it was more expensive to finance certain types of properties through the CMBS market.  But, of course, the CMBS market is not the only means to finance the purchase of property.  Moreover, as the BTA pointed out, many other factors influence the value of property in a particular market.  Were we to subject this case to de novo review, we might well find that the increased spread alluded to was sufficiently indicative of a changing market to rebut the recency of the sale.  But our review is not de novo.  Here we must defer to the BTA's credibility determination, and we may only reverse if we find the BTA's decision unreasonable.  The BTA fully considered the evidence presented, and we cannot say its decision was unreasonable.

{¶18}  Additionally, the BTA expressed concerns that despite Trophy's claims that the market had changed, Mr. Plummer had not included any adjustments for market changes in his sales comparison analysis.  Obviously, if the market was rapidly declining, it would be appropriate to adjust downwardly the value of property sold before the tax lien date.  Plummer admitted that he "probably should have had one in for market adjustments," but also represented that "we make our own allocation in all the adjustments. * * * [T]hey're reflected in the [economic characteristic] adjustments below."  The BTA found this explanation to lack credibility.  It cited *The Appraisal of Real Estate* (13th Ed.2008) for the proposition that the "economic characteristics" adjustment "typically accounts for a property's leasing factors, e.g., expense ratios, lease provisions, management, tenant mix."  It noted further that nowhere did the appraisal reports indicate how market conditions had been factored into the economic characteristics adjustments, and market conditions are not customarily accounted for in such adjustments.

{¶19} On appeal, Trophy challenges the BOR's statement that the record is "void of adjustments for comparable sales." It points to several instances where a downward adjustment was made as part of the "economic characteristic adjustment" and argues that these adjustments reflect adjustments for the change in property values. This argument is belied by the appraisals themselves. The table below shows every parcel of "comparable" property used in the appraisals and the economic adjustment made in each case:

| Property | Type | Sale Date | Economic Adjustment |
|---|---|---|---|
| Manchester Plaza | Retail | February 2005 | 15% |
| 360 Gest St. Queensgate | Flex | March 2005 | 0% |
| Union Center Pavilion | Retail | March 2005 | -20% |
| Surrey Square | Retail | August 2005 | 0% |
| 9435 Waterstone Blvd. | Office | January 2006 | -15% |
| 3 Crowne Point Drive | Office | January 2006 | -20% |
| Blue Ash Office Center | Office | May 2006 | 10% |
| Cornell Center | Office | June 2006 | -10% |
| Enterprise Business Park | Flex | September 2006 | 0% |
| Enterprise Park | Flex | April 2008 | 0% |
| Skytop Pavilion | Retail | July 2008 | -25% |

{¶20} If economic adjustments were made in the manner that Trophy suggests, one would expect consistent downward adjustments for property sales prior to January 1, 2008. The above table shows nothing of the sort. Rather, it shows that in the comparisons used to value the four "flex" properties, no adjustments were made at all, despite the fact that two of the sales occurred well before the tax lien date. As for the

9

four comparables used to evaluate the three office properties, three do include downward adjustments; but the fourth, which occurred in the same month as Trophy's property purchase, actually reflects an upward adjustment. Three of the comparable retail properties were sold back in 2005 (well before the tax lien date), yet only one of these properties includes a downward adjustment.

{¶21} This case is similar to *Olentangy Local School Bd. of Edn.*, 125 Ohio St.3d 103, 2010-Ohio-1040, 926 N.E.2d 302. In that case, the court upheld a decision of the BTA, which reversed a decision of the BOR, on the basis that the taxpayer had failed to rebut the presumption that flows from a recent arm's-length sale. In rejecting the contention that the sale was not recent due to a change in market conditions, the Supreme Court noted that the adjustments performed to comparable sales were not consistent with the appraiser's theory of a downward declining market. *Id.* at ¶ 18. It was not unreasonable for the BTA to reach the same conclusion in this case.

{¶22} Trophy also argues that the BTA failed to give sufficient consideration to testimony that the transaction occurred as part of a like-kind exchange pursuant to 26 U.S.C. 1031. Section 1031 allows a property owner to exchange relinquished property for replacement property of like-kind, while deferring payment of capital gains taxes on the transaction. The essence of Trophy's argument is that because Trophy needed to acquire the subject property to complete the exchange and obtain a tax benefit, the sale price was inflated.

{¶23} Typically, courts consider the impact of a section 1031 exchange in the context of whether an exchange was arm's length. *Worthington*, 129 Ohio St.3d 3, 2011-Ohio-2316, 949 N.E.2d 986, at ¶ 30. An arm's-length transaction occurs voluntarily, typically takes place in an open market, and involves parties acting in their own self-interest. *N. Royalton*, 129 Ohio St.3d 172, 2011-Ohio-3092, 950 N.E.2d 955, at

¶ 24. Trophy concedes that the transaction was voluntary in that it involved a willing buyer and seller, and occurred without compulsion or duress. Additionally, there was testimony that the sale was open to the public, that it was marketed through a realtor, and that Trophy was able to negotiate the price down over $3.5 million from the asking price. Nonetheless, Trophy suggests that the circumstance of the section 1031 exchange should somehow be factored into the "recency" analysis.

{¶24} While evidence that a purchaser was motivated by tax benefits may call into question the reliability of the sales price as reflective of market value, here the BTA found the evidence presented insufficient to challenge the arm's-length nature of the transaction. Trophy offered the testimony of James Bastin, a Trophy property manager who formerly represented the seller at the time of the transaction. Although Mr. Bastin testified to his understanding that Trophy purchased the property, in part, to gain a tax benefit, he had no personal knowledge of Trophy's motivations and could not testify about how those motivations impacted the sale price, if at all. He knew nothing of the particulars of the like-kind exchange, or about Trophy's property acquisition and selection process. When asked about his suggestion that the tax benefit allowed the buyer to pay more for the property, Mr. Bastin could only say, "That's usually the motivation in a 1031." When pressed further about the external factors driving the price, he responded, "I don't know. We can all surmise a bunch of things. There were hundreds of factors out there." From this record, we cannot say that the BTA erred in finding that the evidence pertaining to the 1031 exchange was insufficient to rebut either the arm's-length nature or the recency of the transaction. We overrule the second assignment of error.

11

V.

**{¶25}** Trophy makes repeated note of comments made by BOR members indicating their agreement with Trophy's position. But the fact that Trophy's case may have been going well in front of the BOR does not eliminate Trophy's need to fully develop its evidence for review by the BTA. The BTA discussed the evidence, considered Trophy's arguments, and concluded that Trophy had not satisfied its burden to rebut the recency of the May 2006 sale. While we may have weighed the evidence differently, we cannot say that there was not "reliable and probative support for the BTA's determinations." *Worthington* at ¶ 16. Because its decision was not unreasonable or unlawful, we affirm the decision of the BTA.

Judgment affirmed.

**DINKELACKER, P.J.,** concurs.
**FISCHER, J.,** concurs in judgment only.

Please note:

The court has recorded its own entry on the date of the release of this opinion.