[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Emerson Network Power Energy Sys., N. Am., Inc. v. Lorain Cty. Bd. of Revision,* Slip Opinion No. 2016-Ohio-8392.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2016-OHIO-8392

EMERSON NETWORK POWER ENERGY SYSTEMS, NORTH AMERICA, INC., APPELLANT, *v.* LORAIN COUNTY BOARD OF REVISION ET AL., APPELLEES.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Emerson Network Power Energy Sys., N. Am., Inc. v. Lorain Cty. Bd. of Revision,* Slip Opinion No. 2016-Ohio-8392.]**

*Taxation—Real-property-valuation—Board of Tax Appeals erred by declining to consider property owner's posthearing evidence of transfer of property and by determining that BTA's first decision was based on clerical error that could be corrected without weighing conflicting evidence of value of property—BTA's decisions vacated and cause remanded.*

(No. 2014-1781—Submitted August 30, 2016—Decided December 28, 2016.)

APPEAL from the Board of Tax Appeals, No. 2013-5354.

_____

**Per Curiam.**

{¶ 1} This real-property-valuation case concerns the proper valuation for tax year 2012 of an unused office-warehouse property.  The Lorain County auditor

valued the property at $1,388,700, and the property owner—appellant, Emerson Network Power Energy Systems, North America, Inc. ("Emerson")—variously sought a sale-price valuation of $50,000 and an appraisal valuation of either $450,000 or $588,000. Although the sale price was originally rejected by the Lorain County Board of Revision ("BOR") on the grounds that the sale had not been consummated, the transfer allegedly did occur after the hearing held by the Board of Tax Appeals ("BTA"). Because the evidence of transfer was presented after the close of its hearing, the BTA rejected the sale price and, in the final of its three decisions in this matter, adopted $588,000 as the value of the property.

{¶ 2} On appeal, Emerson argues that the BTA had a duty to consider its posthearing evidence of the consummation of the sale for a price of $50,000. Alternatively, Emerson argues that the appraisal valuation was shown to be $450,000 rather than $588,000. Given the peculiarities of the case, we hold that the BTA erred both by declining to consider the belated evidence of the transfer of the property as well as by concluding that the BTA's initial decision was based on a "clerical error" that could be corrected without weighing the conflicting evidence of the value of the property. We therefore vacate the BTA's decisions and remand the cause for further proceedings.

## FACTUAL BACKGROUND

*The property*

{¶ 3} The subject property was vacant as of the tax-lien date, January 1, 2012. Construction dated to 1948, with later additions in the 1950s, the 1960s, and finally 1972. The building amounted to 89,400 square feet. On the lien date, it was in need of repair and contained asbestos. According to Emerson's vice president Stephen Clarke, who testified before the BTA, the company had long planned to demolish the building or sell the property by the January 1, 2012 tax-lien date. At the BOR, Bob Pollock, facility manager for Emerson, testified that Emerson

2

vacated the property at issue in September 2010. Thereafter, Emerson attempted to donate the property but without success.

*The BOR proceedings*

{¶ 4} Emerson filed a complaint challenging the auditor's $1,388,700 valuation of its property for 2012, a reappraisal year in Lorain County, and seeking a reduction to $400,000. Appellee Lorain City Schools Board of Education ("BOE") filed a countercomplaint seeking retention of the auditor's valuation.

{¶ 5} At the BOR, Emerson introduced into evidence a draft purchase agreement for the property, under which the buyer would pay $50,000 to acquire the property for a call-in data center. The buyer had no preexisting relationship with Emerson. The BOR heard the testimony offered by Emerson witnesses and considered the purchase agreement but ruled that the draft agreement was not itself a sale and retained the auditor's valuation.

*The BTA proceedings*

{¶ 6} Emerson appealed to the BTA. At the BTA hearing, Emerson presented two theories of value as alternatives: (1) the $50,000 sale price, again based not on an actual transfer of the property but only on the draft purchase agreement, and (2) an appraisal report in two written versions, prepared by Lawrence Mitchell, MAI.

{¶ 7} In light of Emerson's submission of two versions of the appraisal report, Mitchell's testimony led to confusion at the BTA. One version of the report bore the date March 19, 2014, and was the subject of most of Mitchell's testimony. That version of the report stated a valuation of $588,000. But Emerson also introduced a different version of the report that bore the date March 21, 2014, used the same comparables as the March 19 version, and stated a valuation of $450,000.

{¶ 8} Emerson's counsel examined Mitchell on the March 19 version of the report, and Mitchell testified, "Mr. Louis [Emerson's counsel] said it was 450,000—but we're actually at 588,000 that was our final value conclusion on

this." Later in his testimony, he reiterated, "So my final conclusion as of January 1st, 2012 was $588,000."

{¶ 9} Thereafter, Emerson's counsel mentioned the March 21 version of the appraisal report with an opinion of value of $450,000 and asked whether Mitchell was familiar with it. Mitchell responded, "Now that you've mentioned it, yes." Then counsel asked, "Can you talk to the Board about your work and the difference between reaching a conclusion of $450,000 and $588,000?" Mitchell's answer was "inefficiency in the market data" and that "a value anywhere in that range [presumably meaning $450,000 to $588,000] would be supportable and reasonable." He also stated, "I couldn't find anything that would indicate that it's worth $50,000."

{¶ 10} The hearing examiner asked Mitchell to elaborate on the existence of the two reports with two different dates. Mitchell responded that a coworker took responsibility for the first version, after which Mitchell made his comments and updates, resulting in the later version.

{¶ 11} No further testimony of Mitchell on the March 21 version of the appraisal report was elicited. Notable by its absence is any direct testimony from Mitchell that the $450,000 opinion of value is more accurate than the $588,000 valuation.

{¶ 12} No briefing was scheduled at the BTA hearing. After the hearing, Emerson nonetheless filed a brief in the BTA on August 14, 2014; that brief, along with a reply brief filed on September 10, 2014, stated that the alleged $50,000 sale of the subject property closed "on or about August 1, 2014." Attached to the brief were an auditor-stamped copy of the deed and an executed but not stamped or certified conveyance-fee statement indicating $50,000 as the sale price.

{¶ 13} In a response brief, the BOE objected to Emerson's submission after the hearing of the sale evidence as improper, challenging the documents as

4

insufficient evidence of the sale price and noting the lack of cross-examination regarding the completed sale.

*The BTA's three decisions*

{¶ 14} The BTA issued three successive decisions in this matter, in conjunction with two successive motions for reconsideration filed by the parties.

{¶ 15} The first of the three decisions was issued on September 11, 2014; in it, the BTA made no mention of the posthearing evidence of the transfer of the property submitted by Emerson and observed that a sale has not occurred until property has been transferred. BTA No. 2013-5354, 2014 WL 5406601, *2 (Sept. 11, 2014). The BTA then adopted the $450,000 opinion of value stated in Mitchell's March 21 appraisal report. *Id.*

{¶ 16} After Emerson filed a motion for reconsideration, the BTA issued a second decision on September 30, 2014. Emerson's motion had urged the BTA to consider the posthearing sale evidence and adopt the alleged $50,000 sale price as the property value. The BTA's second decision denied the motion, stating that Emerson "seeks to have this board consider evidence of a sale that was not properly made part of the record, i.e., through the hearing process or by motion and/or stipulation of facts after the hearing." BTA No. 2013-5354, 2014 WL 5406402, *1 (Sept. 30, 2014).

{¶ 17} Meanwhile, on September 29, 2014, the BOE had filed a motion for reconsideration of its own, stating that Emerson had "submitted an appraisal valuing the subject property at $450,000 which was amended at the hearing to value the subject property at $588,000." The BOE's motion asked the BTA to "correct its clerical error and use [the] appraiser's actual opined value of $588,000." This motion led to the issuance of the third BTA decision in this matter, on October 9, 2014; in it, the BTA granted the BOE's motion and adopted $588,000 as the property value, accepting as undisputed the BOE's assertion of a "clerical issue" in

the BTA's original decision.[1]  BTA No. 2013-5354, 2014 WL 5406662, *1 (Oct. 9, 2014).

{¶ 18} The October 9 decision of the BTA vacated the decision that the BTA had issued on September 11.  Thus, the BTA's final decision reached the valuation for tax year 2012—$588,000—that we consider in this appeal.

## ANALYSIS

### The BTA Improperly Declined to Consider the Transfer Evidence that Was Submitted after the Hearing

{¶ 19} The sale in this case is not alleged to have occurred until on or about August 1, 2014—several weeks after the June 17, 2014 BTA hearing.  The BOR and the BTA both correctly refused to rely on the draft purchase agreement alone to establish the property value, given that the sale had not been consummated.  *See N. Royalton Bd. of Edn. v. Cuyahoga Cty. Bd. of Revision*, 129 Ohio St.3d 172, 2011-Ohio-3092, 950 N.E.2d 955, ¶ 19 (for purposes of property valuation, "the transfer is an essential element and the sale has not occurred until the property has been transferred").

{¶ 20} Emerson does not dispute that the BTA hearing had ended and the record had closed by the time of the alleged sale, but argues that the BTA should have considered the evidence of the transfer once Emerson had alleged that the sale had been consummated.  We agree.  Although the deed and conveyance-fee statement had been attached to the property owner's brief, the BTA initially issued a decision predicating a "find[ing] that no sale has taken place" upon a purported "absence of any transfer of title," BTA No. 2013-5354, 2014 WL 5406601, at *2 (Sept. 11, 2014).  No acknowledgement was made of the submission of documentation with the brief, and no ruling was made on whether the documents

---

[1] Emerson's notice of appeal to this court was filed on October 14, 2014, and was therefore within the 30-day appeal periods started by the BTA's September 30 decision and its October 9 decision (which vacated its September 11 decision).

should be considered. We acknowledge the general principle that new evidence may not be submitted after a hearing, *Columbus Bd. of Edn. v. Franklin Cty. Bd. of Revision*, 76 Ohio St.3d 13, 16, 665 N.E.2d 1098 (1996), but we conclude that the present case constitutes an exception to the rule.

{¶ 21} In this case, the evidence of transfer supplemented the evidence of an impending sale that was already in the record, and the property owner's motion for reconsideration squarely placed a request to consider that evidence before the BTA. At a minimum, reconsideration was necessary to make a ruling on the new evidence, and the BTA erred by doing nothing more than stating that, to date, the transfer evidence had not properly been made part of the record—thereby dodging the issue *whether it ought to be made part of the record*. We hold that under these particular circumstances, further proceedings to allow admission of the evidence were warranted. Upon remand, if the BTA finds that the sale has been consummated, the BTA should next determine whether the sale is a recent, arm's-length transaction that constitutes the value of the property on the tax-lien date.

**The BTA Erred By Not Explaining Why It Relied on the $588,000 Valuation Rather than the $450,000 Valuation**

{¶ 22} The BTA based its decision to adopt the $588,000 valuation after reconsideration in place of the $450,000 valuation on the theory that the first decision was based on a clerical error. Emerson argues that the conflict between the two differing opinions of value is anything but clerical in nature—that it is a substantive difference calling for the exercise of the BTA's authority to value the property. We agree.

{¶ 23} The BTA's third decision adopts the opinion of value set forth in the March 19, 2014 version of the appraisal report—$588,000—as opposed to the opinion of value set forth in the March 21, 2014 version of the report—$450,000. BTA No. 2013-5354, 2014 WL 5406662 (Oct. 9, 2014). The two opinions of value offered by the same appraiser are conflicting evidence of value, and we have held

that "[w]here there is conflicting evidence, the BTA must address potentially material conflicts in the evidence before simply adopting an appraiser's opinion of value," *Jefferson Industries Corp. v. Madison Cty. Bd. of Revision*, __ Ohio St.3d __, 2016-Ohio-7089, __ N.E.3d __, ¶ 24. We hold that this principle applies to the two opinions of the same appraiser here and that the BTA must explain its reasons for preferring the one value over the other.

## CONCLUSION

{¶ 24} For the foregoing reasons, we conclude that the BTA erred by declining to consider the posthearing evidence of the transfer of the property and by determining that the BTA's first decision was based on a clerical error that could be corrected without weighing the conflicting evidence of the value of the property. We therefore vacate the BTA's decisions as to both points, and we remand the cause with instructions to the BTA to reconsider its decision not to rely on the $50,000 sale price. If the BTA finds that the sale has been consummated, it shall determine whether the sale was recent and at arm's length; if not, the BTA shall weigh the appraisal evidence.

Judgment accordingly.

O'CONNOR, C.J., and PFEIFER, KENNEDY, FRENCH, and O'NEILL, JJ., concur.

LANZINGER, J., concurs in judgment only.

O'DONNELL, J., dissents, with an opinion.

_____

**O'DONNELL, J., dissenting.**

{¶ 25} Respectfully, I dissent.

{¶ 26} In my view, the majority loses sight of our limited function in reviewing determinations by the Board of Tax Appeals ("BTA") of the value of real estate. The majority overrules two BTA rulings: first, its decision not to consider evidence of a transfer of the property when that evidence was submitted

after the close of the hearing; and second, its decision that the appraiser's $588,000 valuation more accurately estimates the value of the property than his $450,000 valuation. Both of these decisions lie squarely within the BTA's discretionary power to regulate the submission of evidence and determine its probative force. Indeed, it is elemental and undisputed that "[a]bsent a showing of an abuse of discretion, the BTA's determination as to the credibility of witnesses and the weight to be given to their testimony will not be reversed by this court." *EOP-BP Tower, L.L.C. v. Cuyahoga Cty. Bd. of Revision*, 106 Ohio St.3d 1, 2005-Ohio-3096, 829 N.E.2d 686, ¶ 14, citing *Witt Co. v. Hamilton Cty. Bd. of Revision*, 61 Ohio St.3d 155, 157, 573 N.E.2d 661 (1991). I fail to discern any abuse of discretion on either point.

{¶ 27} As for the sale price, the majority acknowledges that the board of revision ("BOR") and the BTA both correctly rejected the use of a sale price given that the sale had not yet been consummated. The alleged consummation took place almost a month and a half after the BTA hearing closed, and the general principle is that new evidence may not be submitted after the parties have rested their case at the BTA hearing. *Columbus Bd. of Edn. v. Franklin Cty. Bd. of Revision*, 76 Ohio St.3d 13, 16, 665 N.E.2d 1098 (1996) ("Because these documents were not part of the original record from the BOR and were submitted after the BTA hearing, they must be disregarded by the BTA"); *accord Fogg-Akron Assocs., L.P. v. Summit Cty. Bd. of Revision*, 124 Ohio St.3d 112, 2009-Ohio-6412, 919 N.E.2d 730, ¶ 14 (BTA justified in not considering evidence submitted not only after hearing but after decision); *AP Hotels of Illinois, Inc. v. Franklin Cty. Bd. of Revision*, 118 Ohio St.3d 343, 2008-Ohio-2565, 889 N.E.2d 115, ¶ 8, fn. 1 (declining to consider new evidence presented during appeal from BTA's decision). In my view, that principle amply justified the BTA in declining to consider the documents that Emerson submitted on August 14, 2014.

**{¶ 28}** Finally, there is the matter of which appraisal valuation is correct. The BTA vacillated, first adopting the $450,000 value set forth in the later appraisal report, then vacating that determination and adopting the $588,000 value from the earlier appraisal report. Whether or not the BTA's initial determination rested on a clerical error is a matter for resolution by the BTA. What confronts this court is a change in the BTA's evaluation of the record. Given the appraiser's testimony regarding the $588,000 valuation, the BTA did not abuse its discretion by adopting that value.

**{¶ 29}** Accordingly, I would defer to the BTA and affirm its ultimate decision in this case. I therefore dissent from the majority's decision to vacate the BTA's decisions and remand the cause to the BTA.

_____

Bailey Cavalieri, L.L.C., and Harlan S. Louis, for appellant.

Kolick & Kondzer, Thomas A. Kondzer, and Matthew Marsalka, for appellee Lorain City School District Board of Education.

_____