[Cite as *Akron City School Dist. Bd. of Edn. v. Summit Cty. Bd. of Revision,* 139 Ohio St.3d 92, 2014-Ohio-1588.]

AKRON CITY SCHOOL DISTRICT BOARD OF EDUCATION, APPELLEE, *v*. SUMMIT COUNTY BOARD OF REVISION ET AL., APPELLEES;

BARKOFF ET AL., TRUSTEES, APPELLANTS.

[Cite as *Akron City School Dist. Bd. of Edn. v. Summit Cty. Bd. of Revision,* **139 Ohio St.3d 92, 2014-Ohio-1588.**]

*Taxation—Real property—Valuation—Presumption from recent sale that sale price reflects property's value—Sale occurring more than 24 months before tax-lien date should not be presumed to be "recent" when different value has been determined for that lien date as part of six-year reappraisal—Proponent of sale price must come forward with evidence that character of property or market conditions have not changed between sale date and lien date.*

(No. 2012-1542—Submitted September 10, 2013—Decided April 16, 2014.)

APPEAL from the Board of Tax Appeals, No. 2009-K-3018.

———————————

**PFEIFER, J.**

**{¶ 1}** In August 2005, the real property at issue was sold for $1,407,000. In assessing the property for tax year 2008, appellee Summit County fiscal officer performed the reappraisal that the law requires every six years and determined the value of the property to be $902,320. Appellee Akron City School District Board of Education ("school board") filed a complaint asserting that the 2005 sale price should be adopted as the value of the realty. Relying entirely upon the presumption that the sale was within a reasonable time before the tax-lien date, the school board presented no evidence in support of the sale being recent with respect to the tax-lien date, January 1, 2008.

**{¶ 2}** Appellee Summit County Board of Revision ("BOR") declined to use the sale price and retained the fiscal officer's value. On appeal, the Board of Tax Appeals ("BTA") reversed. The property owners, appellants Rodger L. and Sharon L. Barkoff, trustees, appealed. They argue that when property has been the subject of the reappraisal that occurs every six years, a sale 29 months before the lien date is not recent and thus no presumption arises that the sale price reflects the property's value. We agree, and we therefore reverse the BTA's application of the recency presumption. We also remand for further proceedings.

### Facts

**{¶ 3}** The property at issue is an Akron-area Arby's restaurant. For tax year 2008, which was a reappraisal year in Summit County, the fiscal officer[1] determined the true value of the property at issue to be $902,320. In March 2009, the school board filed a valuation complaint asserting that the value of the property was $1,407,000, which was the sale price from an August 11, 2005 sale.

**{¶ 4}** A hearing was held before the BOR, at which the Barkoffs argued that a sale 29 months before the January 1, 2008 lien date was too remote. According to the Barkoffs, the remote sale should not be regarded as probative because the fiscal officer had conducted the reappraisal fully cognizant of the 2005 sale, but nonetheless determined a lower value than the sale price.

**{¶ 5}** More specifically, the Barkoffs also argued that market conditions had changed. They presented evidence that a substantially similar Arby's restaurant in the Toledo area sold for $1,000,000, all cash, in July 2008. This sale was offered to corroborate the lower value found by the fiscal officer for 2008 and to negate the validity of using the August 2005 sale price.

---

1. In Summit County, the fiscal officer performs the same functions as a county auditor, including the function of tax assessor for real property.

**{¶ 6}** On September 18, 2009, the BOR issued a decision retaining the fiscal officer's valuation of the property, and the school board appealed to the BTA.

**{¶ 7}** At the BTA, the parties waived a hearing, and the board decided the appeal based on the BOR transcript and the briefs submitted by the parties. Relying on R.C. 5713.03 and case law from this court regarding the presumption that a sale is recent, the BTA found that the Barkoffs had not rebutted that presumption and therefore adopted the $1.4 million sale price from August 2005 as the value of the property for tax year 2008. *Akron City School Dist. Bd. of Edn. v. Summit Cty. Bd. of Revision*, BTA No. 2009-K-3018, 2012 WL 3644672, *3 (Aug. 14, 2012). The board found the comparable-sale evidence unpersuasive, characterizing it as "uncorroborated evidence of a cash-only transaction" and emphasizing that the sale was "located in a different area" and that "little information" was available about the sale. *Id*. The BTA cited *HK New Plan Exchange Property Owner II, L.L.C. v. Hamilton Cty. Bd. of Revision*, 122 Ohio St.3d 438, 2009-Ohio-3546, 912 N.E.2d 95, as an example of the use of a 24-month-old sale. *Id*. at *3, fn. 1.

**{¶ 8}** In this appeal, the BOR and the fiscal officer have changed their positions: as appellees, they urge the court to affirm the BTA's adoption of the sale price, which constitutes a higher value and thereby increases the tax base.

## Analysis

*1. Whether the presumption of recency applies is a question of law*

**{¶ 9}** The true value of property is a "question of fact, the determination of which is primarily within the province of the taxing authorities," and accordingly, we "will not disturb a decision of the Board of Tax Appeals with respect to such valuation unless it affirmatively appears from the record that such decision is unreasonable or unlawful." *Cuyahoga Cty. Bd. of Revision v. Fodor*, 15 Ohio St.2d 52, 239 N.E.2d 25 (1968), syllabus. This case poses the question whether,

for purposes of former R.C. 5713.03 (140 Ohio Laws, Part II, 2722), the August 2005 sale of the property at issue should be presumed to have occurred "within a reasonable time" of the tax-lien date, January 1, 2008, even though the fiscal officer had conducted the intervening reappraisal and determined a lower value.

{¶ 10} Statutory construction presents a question of law that we determine de novo. *See Akron Centre Plaza, L.L.C. v. Summit Cty. Bd. of Revision*, 128 Ohio St.3d 145, 2010-Ohio-5035, 942 N.E.2d 1054, ¶ 10. With regard to whether a sale is recent, the statute conditions the use of the sale price on the sale having occurred "within a reasonable length of time, either before or after the tax lien date." R.C. 5713.03. The statute does not state whether a sale should be presumed to be recent. In construing and applying the statute, we have recognized that this presumption is important, because if the taxing authorities were to "require a definitive showing by the proponent that no evidence controverted the recency and arm's-length character of the sale, then most cases involving a sale price would require the proponent to introduce appraisals and other extrinsic evidence showing the *absence* of any reason *not* to use the sale price to determine value." (Emphasis sic.) *Cummins Property Servs., L.L.C. v. Franklin Cty. Bd. of Revision*, 117 Ohio St.3d 516, 2008-Ohio-1473, 885 N.E.2d 222, ¶ 41. Thus, the presumption of recency in relation to the tax-lien date falls into the category of "judicially created presumptions" that are designed to effectuate a statute that "makes no express provision for their use." *United States Dept. of Justice v. Landano*, 508 U.S. 165, 174-175, 113 S.Ct. 2014, 124 L.Ed.2d 84 (1993).

{¶ 11} Because the BTA applied a judicially created presumption in this case, this appeal from its decision raises a purely legal issue whether that presumption ought to have been applied under the circumstances in this case. Just as with an issue of statutory construction, we exercise de novo authority.

*2. The case law does not establish that a 29-month-old sale*
*must be presumed to be recent*

{¶ 12} Former R.C. 5713.03 stated that a county auditor (or in this case fiscal officer) "*shall* consider the sale price * * * to be the true value for taxation purposes" when the property "has been the subject of an arm's length sale between a willing seller and a willing buyer within a reasonable length of time, either before or after the tax lien date." (Emphasis added.)[2] 140 Ohio Laws, Part II, 2722. "The best evidence of the 'true value in money' of real property is an actual, recent sale of the property in an arm's-length transaction." *Conalco v. Monroe Cty. Bd. of Revision*, 50 Ohio St.2d 129, 363 N.E.2d 722 (1977), paragraph one of the syllabus, citing *State ex rel. Park Invest. Co. v. Bd. of Tax Appeals*, 175 Ohio St. 410, 195 N.E.2d 908 (1964). "[T]he only rebuttal lies in challenging whether the elements of recency and arm's-length character between a willing seller and a willing buyer are genuinely present for that particular sale." *Cummins*, 117 Ohio St.3d 516, 2008-Ohio-1473, 885 N.E.2d 222, ¶ 13, citing *Berea City School Dist. Bd. of Edn. v. Cuyahoga Cty. Bd. of Revision*, 106 Ohio St.3d 269, 2005-Ohio-4979, 834 N.E.2d 782.

{¶ 13} We have not set a bright line to establish when a sale is sufficiently close to the tax-lien date to be presumed to be recent. *See New Winchester Gardens, Ltd. v. Franklin Cty. Bd. of Revision*, 80 Ohio St.3d 36, 44, 684 N.E.2d 312 (1997) ("The question of how long after a sale the sale price is to be considered the best evidence of true value will vary from case to case"), *overruled in part on other grounds, Cummins*; *see also Dublin-Sawmill Properties v. Franklin Cty. Bd. of Revision,* 67 Ohio St.3d 575, 576, 621 N.E.2d 693 (1993) (noting that there is "no statutory guidance for the time frame within which the

---

2. In 2012 the General Assembly amended the statute to provide that the auditor "may" use the sale price to value the property. 2012 Am.Sub.H.B. No. 487. But the amended statute did not apply to tax year 2008. *See Sapina v. Cuyahoga Cty. Bd. of Revision*, 136 Ohio St.3d 188, 2013-Ohio-3028, 992 N.E.2d 1117, ¶ 20, fn. 1.

purchase price of land will govern true value determinations for purposes of real estate taxation" but reversing as unreasonable the BTA's finding that the sales at issue were too remote to receive any consideration).

{¶ 14} We have not accorded a presumption of recency to a sale that occurred more than 24 months before the lien date, though there are a couple of instances in which we appear to have done so. The BTA cited one in rejecting the Barkoffs' argument. In *HK New Plan*, 122 Ohio St.3d 438, 2009-Ohio-3546, 912 N.E.2d 95, we affirmed a BTA decision that determined the value of property for the 2005 tax year by using the price from a sale in which the deed was executed in December 2002 and the conveyance-fee statement was filed in mid-January 2003. But for two reasons, *HK New Plan* does not constitute authority for using a 24-month-old sale. First, in *HIN, L.L.C. v. Cuyahoga Cty. Bd. of Revision*, 124 Ohio St.3d 481, 2010-Ohio-687, 923 N.E.2d 1144, the court held that for purposes of determining true value under R.C. 5713.03, the date of filing of the conveyance-fee statement should be used as the time of sale rather than the date the sale was negotiated or closed. *Id*., paragraph two of the syllabus and ¶ 21-24. By that measure, the sale in *HK New Plan* occurred on January 13, 2003, *less* than 24 months before the January 1, 2005 lien date. Second, the court never addressed the issue of recency. The board of education in *HK New Plan* opposed using the sale price, but it did so on the basis that the sale was not shown to be at arm's length, not because it was not recent. *Id.* at ¶ 20-23. And even that argument was jurisdictionally barred because it had not been specified in the notice of appeal to the court. *Id*. at ¶ 24. The issues that had been properly asserted did not concern recency.

{¶ 15} Two other "almost 24-month" cases merit attention here: *New Winchester Gardens*, 80 Ohio St.3d 36, 684 N.E.2d 312, and *Dublin-Sawmill Properties*, 67 Ohio St.3d 575, 621 N.E.2d 693. In *New Winchester Gardens*, the sale occurred in October 1984 and the tax-lien date was January 1, 1987. Thus,

the sale in that case (as in the present case) occurred more than two years before the lien date. The 1984 sale price had been used as the value for tax year 1986, but the county auditor set lower values for tax year 1987, which was a reappraisal year in Franklin County. *New Winchester Gardens, Inc. v. Franklin Cty. Bd. of Revision*, BTA Nos. 94-D-390 and 94-D-391, 1996 WL 368492, *1, 2 (June 28, 1996).

**{¶ 16}** The board of revision and the BTA adopted a slightly reduced version of the 1984 sale price as the value of the realty, but this court reversed. As to the recency issue, this court held that the BTA ought to have considered testimony proffered by a witness regarding an intervening change in tax law that affected market conditions, and the reversal was based in part on that holding. Thus, this court was not faced with deciding whether the sale price from 1984 was still *presumptively* recent as of January 1, 1987. As a result, *New Winchester* would not preclude a holding here that a sale 24 months before the lien date is too remote to be accorded a presumption of recency.

**{¶ 17}** In *Dublin-Sawmill Properties,* the property owner acquired several parcels over a period of time and constructed a shopping mall on the resulting single property. The owner contested the county's valuation of the property by presenting evidence of acquisition costs and construction costs to support a lower valuation. *Dublin-Sawmill Properties v. Franklin Cty. Bd. of Revision*, BTA No. 89-M-497, 1992 WL 141256, *2 (June 12, 1992). The tax year at issue was 1987, and the several sales occurred as early as November 1984 and as late as May 1986. *Id.* The BTA specifically disregarded the land sales because the "bulk of the land in this case was purchased in November 1984, and April and September, 1985, times too remote from the tax lien date of January 1, 1987 to be indicative of its current value." *Id.* at *3.

**{¶ 18}** In a four-to-three decision, this court reversed. A three-justice plurality opinion took the view that one of the land sales, the May 1986 one, was

not too remote from the lien date and should therefore have been considered. *Dublin-Sawmill Properties*, 67 Ohio St.3d at 576, 621 N.E.2d 693. As for the other sales, "[e]ven if [they] were 'too remote,' they were some indication of true value and should have been taken into account by the BTA in its deliberations." *Id*. Two features of the *Dublin-Sawmill* decision are significant here. First, the case does not establish any law—the lead opinion is a mere plurality, with a separate concurrence in judgment only, setting forth different reasoning. No opinion commanded the majority of the court. Second, neither the plurality nor the separate concurrence regarded the more remote sales as direct indicators of value as of the lien date.

{¶ 19} In *N. Royalton City School Dist. Bd. of Edn. v. Cuyahoga Cty. Bd. of Revision*, 129 Ohio St.3d 172, 2011-Ohio-3092, 950 N.E.2d 955, Giant Eagle entered into a ground lease with the intent of building a parking lot for the store. *Id*. at ¶ 7. Under the terms of the ground lease, the owner could exercise an option to compel the store to purchase the property for $400,000 during the first five years of the agreement and $450,000 during the next five years of the agreement. *Id.*

{¶ 20} The ground lease was entered into in December 1998, and the parking lot was developed and used by the store pursuant to the ground lease. *Id*. at ¶ 5. During the second five-year period of the contract, the owner exercised the option and required the store to purchase the property for $450,000. That sale occurred in December 2005, and the board of education filed a complaint seeking an increase for tax year 2005 from the $73,700 value assigned by the county auditor to $450,000, the sale price. The board of revision retained the auditor's valuation, but the BTA on appeal adopted the sale price.

{¶ 21} On appeal to this court, the store argued that the sale price was not recent because the price had been negotiated as a term of the ground lease in 1998, some seven years before the lien date. The court rejected that argument,

holding that under *HIN*, 124 Ohio St.3d 481, 2010-Ohio-687, 923 N.E.2d 1144, the sale date is the date on which the conveyance-fee statement is filed. Thus, the time of sale was December 2005 rather than 1998. Once the timing of the sale was viewed in light of *HIN*, less than 12 months separated the lien date and the sale date.

**{¶ 22}** Nothing in our case law compels us to apply a presumption of recency for a sale that occurred more than 24 months before the lien date. Under the circumstances of this case, we decline to do so.

*3. When a sale occurs more than 24 months before the lien date, and the assessor decides not to base the reappraisal on it, the sale should not be presumed recent*

**{¶ 23}** In this case, the fiscal officer, cognizant of the August 2005 sale as reflected by the property record card, nonetheless found a lower value for 2008 as part of the reappraisal for that year. That reappraisal is a legally mandated procedure that occurs every six years in accordance with a schedule promulgated by the tax commissioner. R.C. 5713.01(B); 5715.34(A); Ohio Adm.Code 5703-25-07(A). The fiscal officer's reappraisal reflects the application of established appraisal techniques to determine the value of individual parcels. *See* Ohio Adm.Code 5703-25-07 and 5703-25-13. Procedurally, the fiscal officer is required either to hire outside experts in consultation with the tax department or to conduct the reappraisal in-house in accordance with a detailed plan approved by the tax commissioner. Ohio Adm.Code 5703-25-08(A), (B).[3]

**{¶ 24}** In conducting the reappraisal, the sale price should be used if the sale was "within a reasonable length of time, either before or after the tax lien date." Ohio Adm.Code 5703-25-06(F). On the other hand, the fiscal officer also has the duty, "when practicable, [to] increase or decrease the taxable valuation of

---

3. More recently, the General Assembly has sought to improve the quality of "mass appraisal" at the county level by enacting R.C. 5713.012, which requires employment of a "qualified project manager" with specified qualifications to control the mass appraisal project. 2012 Am.Sub.H.B. No. 487. The new legislation does not affect the year at issue.

parcels in accordance with actual changes in valuation of real property which occur in different subdivisions, neighborhoods, or among classes of real property in the county." Ohio Adm.Code 5703-25-06(E). In other words, the fiscal officer must conduct a reappraisal that considers all relevant factors in determining the current value of the property. As a public official, the fiscal officer is presumed to carry out his statutorily prescribed duties in good faith and in the exercise of good judgment, absent a showing to the contrary. *See Dayton-Montgomery Cty. Port Auth. v. Montgomery Cty. Bd. of Revision*, 113 Ohio St.3d 281, 2007-Ohio-1948, 865 N.E.2d 22, ¶ 13.

{¶ 25} In this case, after the fiscal officer assessed the property at the newly determined value, the school board filed a complaint asking that the 2005 sale price be adopted as the property's value. The school board presented no evidence other than documentation of the 2005 sale and sought to prevail by invoking the presumption of recency. Although the BOR found the school board's case unpersuasive, the BTA reversed and adopted the sale price as the property value for 2008, relying heavily upon the recency presumption.

{¶ 26} We conclude that the BTA's decision is unlawful because the BTA erred by applying the recency presumption under these circumstances. We hold that a sale that occurred more than 24 months before the lien date and that is reflected in the property record maintained by the county auditor or fiscal officer should not be presumed to be recent when a different value has been determined for that lien date as part of the six-year reappraisal. Instead, the proponent of the sale price as the value should come forward with evidence showing that market conditions or the character of the property has not changed between the sale date and the lien date.

{¶ 27} The rule that we adopt today prevents a remote sale from controlling over a more recent appraisal, and in doing so it harmonizes the fiscal officer's duties under former R.C. 5713.03, which stressed the primacy of the sale

price, with R.C. 5713.01(B), which calls for a reappraisal every six years. *See AERC Saw Mill Village, Inc. v. Franklin Cty. Bd. of Revision*, 127 Ohio St.3d 44, 2010-Ohio-4468, 936 N.E.2d 472, ¶ 23 (harmonizing the auditor's duty to carry forward a value determined under R.C. 5715.19 with the auditor's duty to reappraise). Were we to impose a presumption of recency that had no boundaries, the fiscal officer's duty to conduct an accurate reappraisal every six years would be impaired by sales too remote to be relevant. A sale as old as five or even ten years could potentially cast a deep shadow over the tax assessor's performance of his legal duty to adopt and maintain a current valuation of the property. The safeguard in this instance is to remove the recency presumption from a sale that occurred more than 24 months before the lien date.

{¶ 28} We recognize, however, that the 24-month rule that we are announcing in this case is new, and the parties might not have anticipated this innovation. In particular, the absence of bright-line tests in our case law might have led the school board to believe that it could rely on the recency presumption, with no need to present evidence in support of using the sale.

{¶ 29} When we announce a decision that clarifies and corrects the legal standards to be applied, we ordinarily remand with the understanding that the BTA may hear additional evidence. *Woda Ivy Glen Ltd. Partnership v. Fayette Cty. Bd. of Revision*, 121 Ohio St.3d 175, 2009-Ohio-762, 902 N.E.2d 984, ¶ 32. And because this case involves our having shifted the burden by removing a presumption, the school board should have the opportunity to present evidence if it desires. *See AERC Saw Mill Village,* ¶ 37-38. Accordingly, we remand the cause to afford it the opportunity to do so.

## Conclusion

{¶ 30} For the foregoing reasons, the BTA acted unlawfully when it presumed the recency of the August 2005 sale and placed the burden on the Barkoffs to show that it was not recent. We therefore vacate the BTA's

11

determination of value and remand so that the school board may decide whether to present additional evidence in support of using the sale price to value the property. Thereafter, the BTA shall redetermine the value of the property in light of the entire record and in a manner not inconsistent with this opinion.

Judgment accordingly.

O'CONNOR, C.J., and O'DONNELL, LANZINGER, KENNEDY, and O'NEILL, JJ., concur.

FRENCH, J., dissents.

_____

**KENNEDY, J., concurring.**

{¶ 31} I concur fully in the majority's opinion. I write separately to explain why I believe that the dissent is mistaken.

**The majority's 24-month rule best harmonizes the judicially created**
**presumption of recency with the reappraisal duties of the county assessor**

{¶ 32} The issue presented here arises because of statutory duties of the county's tax assessor that are potentially in tension with one another. (That official is the "auditor" in some counties and the "fiscal officer" in others; I will use the term "assessor.") In this case, the Akron City School District Board of Education ("BOE") relies on former R.C. 5713.03, which provided that if a parcel of real estate "has been the subject of an arm's length sale between a willing seller and a willing buyer within a reasonable length of time, either before or after the tax lien date, the auditor *shall* consider the sale price * * * to be the true value for taxation purposes." (Emphasis added.) 140 Ohio Laws, Part II, 2722. On the other hand, "the auditor shall view and appraise or cause to be viewed and appraised at its true value in money, each lot or parcel of real estate * * * at least once in each six-year period * * *." R.C. 5713.01(B); *see also* R.C. 5715.33 (tax commissioner to order sexennial reappraisal of property for tax purposes). Thus, under former R.C. 5713.03, the assessor was under a duty to adopt the price from

a recent, arm's-length sale as the property's value based on finding that the sale is voluntary, recent, and at arm's length; that official is also under a duty to view and appraise or reappraise the property on a six-year schedule. Here the fiscal officer of Summit County performed a reappraisal for tax year 2008 and arrived at a significantly lower value than the earlier sale price.

{¶ 33} I concur in the majority's discussion concerning the assessor's statutory duties. In addition to reviewing the sale price of the property at issue, the reappraisal requires "consideration of all facts tending to indicate current or fair market value." Ohio Adm.Code 5703-25-06(A). The assessor hires expert consultants to carry out a detailed plan approved by the state tax commissioner. Ohio Adm.Code 5703-25-08(A) (requiring auditors to "appoint and employ the experts, deputies, clerks or other employees as the auditor deems necessary"); 5703-25-08(B) (requiring a detailed plan approved by the commissioner). Those consultants typically conduct a "mass appraisal," which involves sophisticated techniques to perform a county-wide valuation of all parcels of real estate. *See* Internatl. Assn. of Assessing Officers, *Property Assessment Valuation* 285 (2d Ed. 1996) ("Mass appraisal is the systematic appraisal of groups of properties as of a given date using standardized procedures and statistical testing," and it "requires the development of a valuation model capable of replicating the forces of supply and demand over a large area"); *see also* Ohio Adm.Code 5703-25-06(E).

{¶ 34} Given this statutory and regulatory framework, the determination of the recency of a sale price during the reappraisal lies in the first instance within the assessor's discretion. But if an owner or a board of education is aggrieved by the reappraisal value, a complaint may be filed pursuant to R.C. 5715.19. In the proceeding initiated by that complaint, the board of revision hears evidence and determines value. *Id.*

{¶ 35} It is in that context—the filing and hearing of a valuation complaint—that a sale price is or is not presumed to be recent to the tax-lien date.

Neither the former nor the current version of R.C. 5713.03 calls for a presumption, but the court has adopted the presumption as an appropriate procedural measure to achieve the legislative aim of the statute: that a sale price be adopted as the property value whenever appropriate. *See Cummins Property Servs., L.L.C. v. Franklin Cty. Bd. of Revision*, 117 Ohio St.3d 516, 2008-Ohio-1473, 885 N.E.2d 222, ¶ 41 (requiring the proponent of adopting the sale price to demonstrate the recency and arm's-length character of the sale price "would defeat the legislative purpose of R.C. 5713.03, which is to promote the use of the recent sale * * * and thereby minimize the need for other evidence when a recent sale price is available").

**{¶ 36}** As salutary as the recency presumption generally is, we should be careful not to let R.C. 5713.03 conflict with the assessor's duty to reappraise property every six years. The presumption is, after all, a judicial construct designed to carry a legislative intent into effect; the statutes do not themselves prescribe and define the presumption. Accordingly, we should limit the presumption when appropriate, and a 24-month limitation is appropriate here.

**{¶ 37}** Like the majority, I am concerned that if there is no limit, a recent reappraisal may always be challenged with a relatively stale sale price, and the burden would then be unduly thrown on those who support the reappraisal valuation. This is particularly disturbing under the present circumstances, where an owner is satisfied with a reappraisal valuation, but must shoulder the burden to furnish support for it merely because the board of education files a complaint based on a 29-month-old sale.

### The *Zell* case does not militate against the 24-month rule adopted by the majority

**{¶ 38}** The dissent contests the majority's assertion that our case law has not accorded a presumption of recency beyond 24 months. The dissent cites *Zell v. Hamilton Cty. Bd. of Revision*, 78 Ohio St.3d 330, 677 N.E.2d 1201 (1997), and

indeed the sale price in that case was adopted even though the sale occurred 29 months after the tax-lien date at issue.

{¶ 39} Although that case may have escaped the majority's notice, and although the dissent rightly demands that we take it into account, close inspection reveals that *Zell* does not contradict the majority's assertion that "[w]e have not accorded a presumption of recency to a sale that occurred more than 24 months before the lien date * * *." Majority opinion at ¶ 14. That is true both because the case does not rely on the presumption of recency and because it involves a sale long after, rather than before, the lien date.

{¶ 40} First, although $2.2 million was determined to be the property value in *Zell*, and although $2.2 million was the price in the sale that occurred 28 months after the tax-lien date, the presumption of recency was not decisive in either the court's or the BTA's decision. Tellingly, our decision in *Zell* makes no mention of recency, because the issue was apparently not raised on appeal. Instead, the only issues considered were whether the sale was at arm's length and whether the sale involved duress. This irrelevance of recency as an issue on appeal is particularly clear when the *Zell* decision is read in light of the companion case, *Cincinnati Bd. of Edn. v. Hamilton Cty. Bd. of Revision*, 78 Ohio St.3d 325, 327-329, 677 N.E.2d 1197 (1997), which addresses the same property and the same sale price applied to a later tax year.

{¶ 41} To be sure, the BTA decision in *Zell* did determine that the sale 28 months after the lien date was recent, and we affirmed that decision. The BTA, finding that the sale was recent, disregarded the appraisals and relied on the sale price alone. But significantly, the BTA's recency determination makes no mention of recency being *presumed*. Instead, the BTA noted that the property owner supported the use of the sale price with appraisal evidence, and the board expressly relied on *affirmative evidence* that the condition of the property on the sale date was similar to its condition on the tax-lien date. *Zell v. Hamilton Cty.*

*Bd. of Revision*, BTA No. 94-N-27, 1996 WL 154479, at *3, 4 (Mar. 29, 1996). Thus, contrary to the dissent's suggestion, neither the BTA decision nor the court's ruling in *Zell* provides explicit support for presuming that a sale more than 24 months removed from the tax-lien date is recent.

{¶ 42} Second, the presumption of recency would arguably have been irrelevant in *Zell* in any event, because the property owner Sam Zell presented independent evidence that the property value on January 1, 1990, was $2.2 million. Namely, Zell offered the appraisal of Ronald P. Davis, who performed an income-capitalization approach and a comparable-sale approach and concluded that the property value was $2.2 million on January 1, 1990. 78 Ohio St.3d at 330, 677 N.E.2d 1201. Although the BTA disregarded the appraisals, including Davis's, the Davis appraisal did furnish independent evidence in support of a $2.2 million valuation. As we noted in *Zell*'s companion case, a " 'presumption is a procedural device which is resorted to only in the absence of evidence by the party in whose favor a presumption would otherwise operate.' " *Cincinnati Bd. of Edn.*, 78 Ohio St.3d at 328, 677 N.E.2d 1197, quoting *Ayers v. Woodard*, 166 Ohio St. 138, 140 N.E.2d 401 (1957), paragraph three of the syllabus. Because Sam Zell had presented independent appraisal evidence of the property's value as of January 1, 1990, the presumption of recency would not have been needed, absent a finding that the appraisal lacked credibility.

{¶ 43} Third, even if *Zell* had explicitly applied a recency presumption to a sale 29 months removed from the tax-lien date (which it did not), the case does not show that the majority is wrong to formulate the 24-month rule here. As I understand the majority opinion, the 24-month rule is very limited: it applies to a reappraisal year in which the assessor was aware of, but did not adopt, an *earlier* sale price. The reason for having a 24-month rule in such a case is that the earlier sale was already taken into account, but found not to be probative because of a perceived change in the market. Accordingly, the 24-month rule does not

necessarily apply to a sale that occurs *after* the lien date of the reappraisal year, because a sale that occurs many months after the reappraisal and the lien date cannot have been taken into account in the reappraisal. Arguably, a later sale constitutes brand new evidence that might call for reconsidering the question of value for the past year.

{¶ 44} For all the stated reasons, I concur with the majority that a sale should not be presumed to be recent when it occurred more than 24 months before the tax-lien date of a reappraisal year when the assessor knew of the sale but chose not to adopt  the sale price as the property value. I also agree with the majority's decision to remand for further proceedings.

—————————————

**FRENCH, J., dissenting.**

{¶ 45} This is a simple property-valuation case. To resolve it, we need only determine whether the Board of Tax Appeals ("BTA") abused its discretion. The majority, however, uses this case as an opportunity to create an entirely new rule of law—a rule that neither party requested and that is contradictory to our precedent and BTA precedent. I therefore respectfully dissent.

*A Bright-Line, 24-Month Rule Contradicts Case Law and Is Improper*

{¶ 46} For decades, we have recognized a rebuttable presumption that the sale price reflects the true value of property. *Walters v. Knox Cty. Bd. of Revision*, 47 Ohio St.3d 23, 24, 546 N.E.2d 932 (1989); *see also Cincinnati School Dist. Bd. of Edn. v. Hamilton Cty. Bd. of Revision*, 78 Ohio St.3d 325, 327, 677 N.E.2d 1197 (1997); *FirstCal Indus. 2 Acquisitions, L.L.C. v. Franklin Cty. Bd. of Revision*, 125 Ohio St.3d 485, 2010-Ohio-1921, 929 N.E.2d 426, ¶ 24. For purposes of former R.C. 5713.03, once a party produces evidence of a sale, a presumption arises that "the sale has met all the requirements that characterize true value," namely, that the sale was recent and was an arm's-length transaction. *Cincinnati* at 326. A party can rebut this presumption by showing that the sale

was either not recent or not arm's-length. *Cummins Property Servs., L.L.C. v. Franklin Cty. Bd. of Revision*, 117 Ohio St.3d 516, 2008-Ohio-1473, 885 N.E.2d 222, ¶ 13 ("a sale price is deemed to be the value of the property, and the only rebuttal lies in challenging whether the elements of recency and arm's-length character * * * are genuinely present").

{¶ 47} As the majority recognizes, we have never set a bright-line rule for determining when a sale is too remote for the presumption to apply, and for good reason; the concept of recency is broader than mere temporal proximity. *See, e.g.*, *Worthington City Schools Bd. of Edn. v. Franklin Cty. Bd. of Revision*, 124 Ohio St.3d 27, 2009-Ohio-5932, 918 N.E.2d 972, ¶ 32. Rather, the concept of recency "encompasses all factors that would, by changing with the passage of time, affect the value of the property," such as changes to the property itself or to the marketplace. *Cummins* at ¶ 35. It is illogical to restrict our recency presumption based solely on temporal proximity when we do not base recency itself solely on temporal proximity.

{¶ 48} More importantly, this new rule conflicts with well-established precedent. In *Zell v. Hamilton Cty. Bd. of Revision*, 78 Ohio St.3d 330, 677 N.E.2d 1201 (1997), a case the majority apparently overlooks, this court applied the sale-price presumption to a sale that occurred 29 months after the tax-lien date. *Zell* directly refutes the majority's belief that this court has never accorded the presumption to a sale more than 24 months outside the lien date and is directly contrary to the majority's assertion that "[t]he case law does not establish that a 29-month-old sale must be presumed to be recent." In fact, *Zell* directly supports application of the presumption to this case, which—just like *Zell*—concerns a sale that occurred within 29 months of the tax-lien date.

{¶ 49} A 24-month rule also conflicts with BTA case law. The BTA has applied the recency presumption to sales that occurred as much as 40 months prior to the tax-lien date. *McCarty v. Clark Cty. Bd. of Revision*, BTA No. 2008-

V-2302, 2010 WL 3724158, *2-4 (Sept. 21, 2010). And in numerous other cases, the BTA has affirmed the use of a sale price even when the sale occurred outside the 24-month perimeter now set by the majority. *See, e.g.*, *Columbus City Schools Bd. of Edn. v. Franklin Cty. Bd. of Revision*, BTA No. 97-G-1216, 2000 WL 854877 (June 23, 2000) (value set by sale 30 months after tax-lien date); *Westerville City Schools Bd. of Edn. v. Franklin Cty. Bd. of Revision*, BTA No. 95-T-278, 1996 WL 90428, *3 (Feb. 23, 1996) (value set by sale 33 months after tax-lien date); *Gahanna-Jefferson Pub. Schools Bd. of Edn. v. Franklin Cty. Bd. of Revision*, BTA No. 94-T-789, 1995 WL 121294, *2 (Mar. 17, 1995) (value set by sale 33 months prior to tax-lien date).

{¶ 50} The majority proceeds as if it is writing on a clean slate, but it is not. Both our precedent and BTA precedent establish that the presumption applies even when the sale occurred more than 24 months outside the tax-lien date.

{¶ 51} Here, the Board of Education of the Akron City School District submitted documentation of the 2005 sale to the BTA. Under our precedent, this documentation raises the rebuttable presumption that the sale price was recent and represented the true value of the property. *FirstCal*, 125 Ohio St.3d 485, 2010-Ohio-1921, 929 N.E.2d 426, at ¶ 24.

{¶ 52} The Barkoffs attempted to rebut this presumption, but failed. In arguing against the sale price, the Barkoffs never proposed the bright-line rule the majority creates. Instead, the Barkoffs argued that the market had undergone significant changes since the 2005 sale date, so the sale was not sufficiently recent. They submitted no credible proof of any market change, however. Their sole piece of evidence was a website printout showing that in July 2008, someone had purchased an Arby's in Lucas County for $1 million. No expert testified whether or to what extent the Summit County market had changed. Nor did an expert testify that the Lucas County market was comparable to the Summit

County market. Instead, the Barkoffs relied solely on statements from their own attorney, claiming that a lone sale from Lucas County proved a change in value to the Barkoffs' Summit County property.

**{¶ 53}** The BTA reviewed and analyzed the Barkoffs' evidence and found that the evidence was not competent to rebut the sale-price presumption raised by the school board, and the BTA was well within its discretion to do so. "The BTA is vested with wide discretion in determining the weight to be given to the evidence and the credibility of the witnesses which come before it." *Tanson Holdings, Inc. v. Darke Cty. Bd. of Revision*, 74 Ohio St.3d 687, 689, 660 N.E.2d 1216 (1996). The BTA need not adopt uncorroborated inferences that a party's counsel offers. *HK New Plan Exchange Property Owner II, L.L.C. v. Hamilton Cty. Bd. of Revision*, 122 Ohio St.3d 438, 2009-Ohio-3546, 912 N.E.2d 95, ¶ 14. The BTA's decision to disregard the Barkoffs' rebuttal evidence was therefore not unreasonable. Nor was it contrary to our precedent. Accordingly, I would affirm the BTA.

### *Conclusion*

**{¶ 54}** The majority overreaches today by creating—unprompted—an arbitrary 24-month-rule for determining when a sale is presumed to be recent. This rule contradicts case law from this court and from the BTA. In accordance with our legal precedent, and in deference to the BTA's discretion in weighing evidence, I would apply the presumption in this case and uphold the BTA's decision. Because the majority determines otherwise, I dissent.

_____

Brindza, McIntire & Seed, L.L.P., and David H. Seed, for appellee Akron City School District Board of Education.

Michael DeWine, Attorney General, and Regina M. VanVorous, Assistant Attorney General, for appellees Summit County Board of Revision and Summit County Fiscal Officer.

Sleggs, Danzinger & Gill Co., L.P.A., and Todd W. Sleggs, for appellants.

_____