[Cite as *2195 Riverside Drive, L.L.C. v. Franklin Cty. Bd. of Revision*, 2015-Ohio-252.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| 2195 Riverside Drive, LLC, | : | No. 14AP-297 |
| | | (B.T.A. No. 2012-2861) |
| Appellant-Appellant, | : | No. 14AP-300 |
| | | (B.T.A. No. 2012-2862) |
| v. | : | No. 14AP-301 |
| | | (B.T.A. No. 2012-2863) |
| Franklin County Board of Revision et al., | : | |
| | | (REGULAR CALENDAR) |
| Appellees-Appellees. | : | |

---

D E C I S I O N

Rendered on January 27, 2015

---

*Lane, Alton & Horst, LLC*, and *Timothy J. Owens*, for appellant.

*Carlile Patchen & Murphy LLP*, and *Jackie Lynn Hager*, for appellee Upper Arlington City School District Board of Education.

---

APPEAL from the Ohio Board of Tax Appeals

BRUNNER, J.

{¶ 1}  Appellant, 2195 Riverside Drive, LLC, appeals the order of the Ohio Board of Tax Appeals determining the true and taxable values of appellant's property for tax years 2009, 2010, and 2011.  For the following reasons, we affirm.

I. Facts and Procedural History

{¶ 2}  The property includes two parcels comprising 1.443 acres in Upper Arlington, Ohio and is the site of the El Vaquero restaurant, which appellant's principals have operated since 1993, originally under long-term leases with its landlord, Sugar Investments.  On September 2, 2009, appellant purchased the subject property from Sugar Investments for $2,000,000.  On February 25, 2010, appellee Upper Arlington City School District Board of Education ("BOE") filed a complaint with the Franklin County

Board of Revision ("BOR") to increase the valuation of the combined parcels from $668,600 to $2,000,000 for tax year 2009. Appellant filed a counter-complaint to retain the then existing Franklin County Auditor's value. For 2010, appellant filed an original complaint asserting that the combined true value remained at $668,600, and the BOE filed a counter-complaint to retain the auditor's values in pro forma fashion, apparently disregarding its complaint for the prior year that appeared to be based on the $2,000,000 sale of the parcels in 2009. Following a combined hearing for both tax years, the BOR adopted the sale price as the total true value for the property in tax years 2009 and 2010, and for 2011 retained the auditor's initial assessment based on the sexennial reappraisal in that same year.

{¶ 3} Appellant filed notices of appeal to the Board of Tax Appeals ("BTA") on one of the two parcels, 070-03535, for 2009 and 2010, and on the other, unimproved parcel, 070-011802, for 2011. The BTA found that the September 2009 sale was a recent, arm's-length transaction and the best indicator of value for 2009, 2010, and 2011. Apportioning the $2,000,000 valuation between the two parcels in the percentages reflected in the auditor's original assessments for each year, the BTA determined the true and taxable values of the parcels on appeal as follows:

January 1, 2009:

| PARCEL NUMBER | TRUE VALUE | TAXABLE VALUE |
|---|---|---|
| 070-003535 | $1,645,230 | $575,830 |

January 1, 2010:

| PARCEL NUMBER | TRUE VALUE | TAXABLE VALUE |
|---|---|---|
| 070-003535 | $1,628,700 | $570,040 |

January 1, 2011:

| PARCEL NUMBER | TRUE VALUE | TAXABLE VALUE |
|---|---|---|
| 070-011802 | $399,840 | $139,940 |

(Board of Tax Appeals Decision and Order, 4.)

## II. Assignments of Error

{¶ 4} Appellant makes the following assignments of error for our review:

> [I.] The Board of Tax Appeals Erred and Made an Unreasonable and Unlawful Decision that the 2009 Sales

Price for the Subject Property was the true value of the
property for tax purposes for tax years 2009 and 2010.
[II.] The Board of Tax Appeals Erred and Made an
Unreasonable and Unlawful Decision regarding the True and
Tax Value of Parcel Number 070-011802 for tax year 2011.

## III. Discussion

### A. Standard of Review:

{¶ 5}   R.C. 5717.04 provides the standard of our review of the BTA's decision:

If upon hearing and consideration of such record and
evidence the court decides that the decision of the board
appealed from is reasonable and lawful it shall affirm the
same, but if the court decides that such decision of the board
is unreasonable or unlawful, the court shall reverse and vacate
the decision or modify it and enter final judgment in
accordance with such modification.

### B. Appellant's First Assignment of Error:

{¶ 6}   Upon considering appellant's first assignment of error, that the board of tax appeals erred and made an unreasonable and unlawful decision that the 2009 sales price for the subject property was the true value of the property for tax purposes for tax years 2009 and 2010, we first consider *Berea City School Dist. Bd. of Edn. v. Cuyahoga Cty. Bd. of Revision*, 106 Ohio St.3d 269, 2005-Ohio-4979. In the *Berea* case, the Supreme Court of Ohio mandated that "when the property has been the subject of a recent arm's-length sale between a willing seller and a willing buyer, the sale price of the property shall be 'the true value for taxation purposes.' " *Id.* at ¶ 13, quoting former R.C. 5713.03, Am.Sub.H.B. No. 260.[1]   As the Supreme Court further expounded in *Cleveland Mun. School Dist. Bd. of Edn. v. Cuyahoga Cty. Bd. of Revision*, 107 Ohio St.3d 250, 2005-Ohio-6434, ¶ 13-14:

Although the presumption exists that the sale price is the best
evidence of true value, that presumption may be rebutted
where the sale is not an arm's-length sale. *Lakeside Ave. Ltd.*

---

[1] In 2012, the General Assembly amended the statute to provide that the auditor "may" use the sale price to value the property. 2012 Am.Sub.H.B. No. 487. The amended statute did not apply to tax years 2009 through 2011. *See Sapina v. Cuyahoga Cty. Bd. of Revision,* 136 Ohio St.3d 188, 2013-Ohio-3028, ¶ 20, fn. 1; *HIN, L.L.C. v. Cuyahoga Cty. Bd. of Revision,* 138 Ohio St.3d 223, 2014-Ohio-523, ¶ 12, fn. 3; *Akron City School Dist. Bd. of Edn. v. Summit Cty. Bd. of Revision,* 139 Ohio St.3d 92, 2014-Ohio-1588, ¶ 12, fn. 2.

> *Partnership v. Cuyahoga Cty. Bd. of Revision* (1996), 75 Ohio St.3d 540, 544, 664 N.E.2d 913. If the presumption that the sale price was the result of an arm's-length transaction is successfully rebutted, then the sale price may not be the best evidence of true value, and a review of independent appraisals based upon other factors may become appropriate. *Pingue v. Franklin Cty. Bd. of Revision* (1999), 87 Ohio St.3d 62, 64, 717 N.E.2d 293.
>
> * * * In *Walters v. Knox Cty. Bd. of Revision* (1989), 47 Ohio St.3d 23, 546 N.E.2d 932, syllabus, we held that "[a]n arm's-length sale is characterized by these elements: it is voluntary, i.e., without compulsion or duress; it generally takes place in an open market; and the parties act in their own self-interest."

Appellant bears the "burden to rebut the presumption that the sale price represented true value." *Id.* at ¶ 15. Appellant must " 'produce evidence of a nature that counterbalances the presumption or leaves the case in equipoise. Only upon the production of sufficient rebutting evidence does the presumption disappear.' " *Id.,* quoting *Myocare Nursing Home, Inc. v. Fifth Third Bank*, 98 Ohio St.3d 545, 2003-Ohio-2287, ¶ 35.

{¶ 7} Appellant maintains that its purchase was economically coerced and, therefore, was not an arm's-length transaction. A member of the appellant company, Sergio Morales, testified at the BOR and BTA hearings that it attempted many times to purchase the property from Sugar Investments, but its efforts had been rebuffed due to the owner's desire to maintain its investment in rental property generating income from the restaurant lease. When appellant finally bought the property in September 2009, five years remained on the lease. In the months before the sale at issue, through a separate entity, El Vaquero had contracted to purchase the adjoining property at 2185 Riverside Drive. Sugar Investments contested the plan and variances required for the proposed new restaurant. Although the Upper Arlington City Council approved the final development plan and variances on June 23, 2009, appellant's principals abandoned their plan to move and build a new restaurant next door. With the threat of further appeal by Sugar Investments to the Franklin County Court of Common Pleas, they did not seek to extend the contract to buy the adjoining property, but, instead, entered into discussions to purchase the subject property from Sugar Investments. According to appellant, Sugar

Investments offered to sell the property for $2,200,000. Appellant countered offered at $1,800,000 and the parties reached agreement for a sale price of $2,000,000.

{¶ 8}  Appellant argues that it was coerced to buy the property after Sugar Investments obstructed its efforts to acquire and develop the property next door, and would compare its purchase with that in *Columbus Bd. of Edn. v. Franklin Cty. Bd. of Revision*, 10th Dist. No. 92AP-281 (Sept. 29, 1992) ("*Karl Road*").  Karl Road operated a nursing home and purchased property on a take-it-or-leave-it basis in order to open a curb cut required for a new pediatric wing and parking lot.  This court reversed the decision of the BTA insofar as the BTA did not analyze the matter in accordance with its earlier holding in *Columbus Bd. of Edn. v. Grange Mut. Cas. Co.*, 10th Dist. No. 90AP-317 (Jan. 28, 1992) ("*Grange*"), that the subjective motives of the buyer and seller may be used to demonstrate that the sale was the result of compulsion or duress.

{¶ 9}  Unlike Karl Road, appellant did not purchase the subject property on a take-it-or-leave-it basis, and appellant did not own adjacent property on which development depended on acquisition of all or a part of the subject property.   Also, in *Grange* the record reflected "evidence that Grange did not have a choice in whether to purchase this property or some other property to meet its needs.  * * *  Grange had no alternative but to buy the subject property if it were to achieve its goal to complete the acquisition of the entire block."  *Id.*  We thus observe that prior to *Lakeside Ave. L.P. v. Cuyahoga Cty. Bd. of Revision*, 75 Ohio St.3d 540 (1996), this court was circumspect in considering purchases of property as part of expanded development by a contiguous owner to qualify as arm's-length transactions.  These circumstances are not present here.

{¶ 10} In *Lakeside*, the BTA crystallized the conflict between its decisions and this court's decisions in *Grange* and *Karl Road* "regarding the proper standard to apply in determining whether a sale of property [is] an arm's-length transaction and the best evidence of true value," and, specifically, what is economic duress.  *Id.* at 547.  The sale in *Lakeside* was for a stated, non-negotiable price, and the Supreme Court recognized that compelling business circumstances of that type "are clearly sufficient to establish that a recent sale of property was neither arm's-length in nature nor representative of true value."  *Id.* at 548.  The circumstances of *Lakeside* were dire:

> The record is clear that Triton felt compelled to purchase the property for the stated price. Failure to purchase the property would have resulted in the loss of a significant portion of Triton's business, which, in turn, would have resulted in Triton's bankruptcy. Triton attempted to secure financing for the transaction, but even Triton's primary asset-based lender would not finance the acquisition of the property, apparently due to the excessive asking price. Indeed, Triton's primary asset-based lender prohibited Triton from applying any cash or working capital toward the purchase of the property. Lakeside was formed by the principals of Triton to purchase the property for the price that had been demanded by the seller. Lakeside, Triton and others undertook some extraordinary, if not desperate, efforts to obtain sufficient financing for the transaction. Under these circumstances, we reject the BTA's conclusions that Lakeside's acquisition of the property was an arm's-length transaction and that the $1.2 million purchase price was representative of true value. Rather, in light of the undisputed evidence in this case, we find that Lakeside's purchase of the subject property was not "voluntary, *i.e.*, without compulsion or duress," within the meaning of [*Walters v. Knox Cty. Bd. of Revision*], 47 Ohio St.3d 23 [(1989), syllabus, due to the economic pressures that came to bear on Lakeside's decision to acquire the property.

> The record clearly establishes that Lakeside never had any real choice but to purchase the property in question. The choice between Triton's survival on the one hand and swift and sure corporate death (bankruptcy) on the other hand presented Lakeside with no true alternative but to pay the price demanded by the seller. Accordingly, we hold that the July 1991 sale of the subject property was not an arm's-length sale due to the compulsive business circumstances fueling Lakeside's decision to acquire the property in question

*Id.* at 549.

{¶ 11} Following *Lakeside,* we held in *Columbus Bd. of Edn. v. Franklin Cty. Bd. of Revision*, 10th Dist. No. 03AP-106, 2004-Ohio-586 ("*Householder*"), that "[a]ppellant's subjective belief, at the time of the purchase, regarding the pressure to make the purchase * * * is simply inconsequential to our analysis. Rather, we must determine whether the evidence regarding the circumstances surrounding this particular purchase is sufficient to rebut the presumption that the sale price reflected true value." *Id.* at ¶ 15, citing *Lakeside* at 548.

{¶ 12} Unlike Lakeside, appellant's principals admittedly had several real choices, and the survival of the restaurant business was not at issue. Purchasing the leased premises involved negotiation, not a take-it-or-leave-it arrangement. Moreover, appellant entered into a purchase agreement for $2,000,000 after its principals declined any further effort through a separate entity to pursue the purchase of adjacent land. Appellant urges that the threat of further litigation by its landlord in the form of an administrative appeal to the Franklin County Court of Common Pleas was the basis for its abandonment of the adjacent property restaurant plans (despite Upper Arlington City approvals). But, the evidence before the BTA shows that appellant's decision to purchase the land upon which its existing restaurant operated was not forced, but, rather, voluntary and a culmination of appellant's repeated past attempts to purchase the subject property. Based on this factual set of circumstances, the legal precedent which we must follow does not lend itself to a duress characterization of appellant's $2,000,000 purchase of the two parcels in question.

{¶ 13} Had the sale of the adjacent property taken place, the evidence shows that El Vaquero intended to undertake a new and larger restaurant on the adjoining property and that appellant's principals would have attempted to sublet the subject premises or simply swallowed the rent obligation to Sugar Investments for the property in question. There is nothing to suggest that El Vaquero could not continue under the lease between appellant and Sugar Investments, or that it was not feasible to relocate and expand the business at another location. Appellant negotiated Sugar Investments' offer to sell the property from $2,200,000 down to $2,000,000. Appellant made the choices to buy the property and update its facility, not to attempt a move from the immediate area, and not to risk the delay or other consequences of prospective appeals from the development and variance approvals it had received from Upper Arlington. These were not compelling business circumstances of the type at issue in *Lakeside.* While Sugar Investments may have acted vigorously to advance its own business interests throughout the Upper Arlington review process, appellant, in its own interests, concluded that acquiring the property for $2,000,000 was the most advantageous economic alternative to modernize and expand its restaurant. We agree with the BTA that "the record does not support the contention that the appellant was not a willing buyer as the purchase of the property was

part of a business decision to remain at the business's current desired location."  (Board of Tax Appeals Decision and Order, 3.)

{¶ 14} The decisions in *Cleveland Mun. School Dist.* and *Householder* are particularly apposite.  *Cleveland* also involved restaurant property.  The Supreme Court sustained the appellants' $1,350,000 purchase price as the true value, over the auditor's valuation of $415,000.  The restaurant owners previously had leased the property from the seller, as did appellant herein.  After the lease expired, the seller demanded an increased rent, or purchase of the property at $1,800,000.  The restaurant owners negotiated the price to $1,350,000, but they still claimed that the purchase was economically coerced due to the threat of increased rent; they also contended that moving to another location would have entailed leaving behind much of the restaurant equipment installed as fixtures to the subject property.  *Cleveland Mun. School Dist.* at ¶ 16.  "While the owners of the Greek Isles Restaurant would have lost much of their investment in the fixtures if they had had to move, there was no evidence that the restaurant could not be relocated or that losing this location would cause the owners to file bankruptcy."  *Id.* at ¶ 19.

{¶ 15} In the case before us, appellant's principals were fully engaged in a move to the adjoining premises but decided to stay put and purchase the subject property, not because it risked losing business, but, rather, because such a decision was its best economic alternative, that is, to expand its restaurant at 2195 Riverside Drive rather than build a new restaurant next door. Payment of a premium price to achieve that best alternative is not duress, as identified in *Lakeside*, which may overcome the presumption that the recent sale under former R.C. 5713.03 provided the true value for property taxation purposes.  As in *Cleveland Mun. School Dist.*, the evidence relating to appellant's purchase of the property in question does not show that it "was the result of economic duress and, therefore, the presumption that the sale was an arm's-length sale was not rebutted." *Id.* at ¶ 20.

{¶ 16} In *Householder*, the appellant owner had operated a beer and wine drive-through business on the premises for approximately 16 years. She was leasing it from the seller on a month-to-month basis when appellant purchased the property.  She testified that she was divorced, that her only source of income was from the business, and that she

was afraid she would lose the business if she did not pay what she did for the property. *Id.* at ¶ 12. Setting aside the appellant's subjective beliefs, we found:

> [A]ppellant has failed to show that she was compelled to purchase the property. Despite appellant's arguments to the contrary, we are unpersuaded that appellant's testimony regarding her fear that the lease would be terminated, the possible cessation of her business on the property, and her status as a divorcée, are sufficient to establish the type of circumstances that rebut the presumption that the sale price reflected true value and show that the sale was not an arm's-length transaction. Thus, appellant failed to produce sufficient evidence to rebut the presumption that the sale price reflected true value

*Id.* at ¶ 15. Our rationale and result in *Householder* obtain here as well.

{¶ 17} Despite the economic pressure and business tactics Sugar Investments applied to advance its own interests, appellant here did not contend that its business would cease if it did not purchase the property for $2,000,000. Apart from appellant's desire to stay in the immediate area, there also was no evidence in the record that the property ultimately acquired was uniquely suited to its needs, especially since appellant was prepared to relocate and build a completely new restaurant on the adjacent land it attempted to purchase. The situation falls far short of the *Lakeside* standard. As in *Householder,* we find the BTA's conclusion that appellant's purchase of the property was an arm's-length transaction and the best evidence of true value to be reasonable and lawful. Appellant did not offer the requisite evidence to rebut the legal presumption that the sale price reflected true value, or to leave the matter in equipoise.

{¶ 18} Appellant's further arguments in reliance on the auditor's later assessments for the subject property and the auditor's valuations of other adjacent property,[2] do not support a contrary result either. While appellant contends that these comparative assessments are indicative of the subject's inflated price, they do not support a finding that rebuts the presumption concerning the circumstances of the September 2009 sale of

---

[2] This other property includes 2185 Riverside Drive, which appellant's principals previously attempted to purchase, along with the Bob Evans restaurant property, adjacent and on the opposite side of the subject property from 2185 Riverside Drive.

the subject property for $2,000,000. "[A] sale price is deemed to be the value of the property, and the only rebuttal lies in challenging whether the elements of recency[3] and arm's-length character between a willing seller and a willing buyer are genuinely present for that particular sale." *Cummins Property Servs., L.L.C. v. Franklin Cty. Bd. of Revision,* 117 Ohio St.3d 516, 2008-Ohio-1473, ¶ 13.

{¶ 19} For proof of value, the BTA has noted that comparative tax valuation analysis is not particularly helpful, since tax valuations alone do not constitute market value. E.g*., Kister v. Ashtabula Cty. Bd. of Revision,* BTA No. 2006-B-1036 (May 11, 2007); *Benit v. Delaware Cty. Bd. of Revision*, BTA No. 1993-B-722 (Mar. 18, 1994); *Haydu v. Portage Cty. Bd. of Revision*, BTA No. 92-H-576 (June 18, 1993). *See also Olentangy Local Schools Bd. of Edn. v. Delaware Cty. Bd. of Revision,* 5th Dist. No. 12-CAH-09-0067, 2013-Ohio-2892, ¶ 17 ("[A]ppellant sought to lower the valuation of its parcels using a parcel similarly situated absent any fair market value assessment or other factors to justify the use of the other parcel's valuation. Absent any corroborating evidence of other like or similar factors, we concur that appellant failed to meet its burden."). Having found, based on sufficient evidence, that the September 2009 sale at $2,000,000 was at arm's length, occurring without duress, the BOR and BTA were required to set the value of the combined parcels at that amount for 2009 and 2010 under *Berea* and its interpretation of former R.C. 5713.03, which at the time required that the sale price of the property shall be "the true value for taxation purposes."

{¶ 20} We also reject appellant's suggestion that the BOE's counter-complaint for tax year 2010, asserting the auditor's valuation of $676,000 rather than the $2,000,000 sale price it claimed for 2009, should be considered in relation to true value, or as a means to somehow impeach the BOE or to estop it from urging a higher valuation at the administrative hearings below. At the BOR hearing, the BOE asked that the $2,000,000 sale price be continued as the true value for 2010. A party is not restricted to the values

---

[3] We note that the term "recency," first recorded as being used in the year 1612, according to Merriam Webster, http://www.merriamwebster.com, means simply "the quality or state of being recent." According to Black's Law Dictionary, http://www.thelawdictionary.org, "recency" is the "[m]easure of the time elapsed since * * * the last purchase was made." Its specific use in Ohio property valuation law is discussed in context with appellant's second assignment of error.

set forth in its complaint as it "places neither minimum nor maximum limitations on the court's determination of value, and there are none save the judicial requirement that the determination be supported by the evidence." *Jones & Laughlin Steel Corp. v. Lucas Cty. Bd. of Revision*, 40 Ohio St.2d 61, 63 (1974). "There is no requirement that the value of the property, as determined by the board of revision, must match the opinion of value set forth in the complaint." *Cleveland Elec. Illum. Co. v. Lake Cty. Bd. of Revision*, 80 Ohio St.3d 591, 595 (1998). The law requires the true valuation of the property for the sake of the public interest in its taxation for the collective good of the community. Accordingly, we overrule appellant's first assignment of error.

### C. Appellant's Second Assignment of Error:

{¶ 21} Finally, though appellant submits no legal authority to sustain its second assignment of error, that the BTA erred and made an unreasonable and unlawful decision regarding the true and tax value of parcel 070-011802 for tax year 2011, it argues:

> [T]he BTA should not have increased the value of Parcel No. 070-011802 for tax year 2011 not only because that price was extrapolated from the 2009 sales price but also because the tax value of either of the parcels was not properly before the BTA; the Franklin County Auditor had set those values pursuant to the most recent triennium valuation.

(Appellant's Brief, 23.)

{¶ 22} Tax year 2011 was properly before the BTA since the BOR had issued a decision for that year, and appellant filed a notice of appeal from that decision to the BTA. It appears that appellant mistakenly inserted the auditor's prior years taxable value as the value for 2011. The BOR actually upheld the auditor's valuation for 2011, the county-wide sexennial reappraisal year, and appellant now seeks to reinstate that value for parcel 070-011802. The BOR had jurisdiction to set the true value for tax year 2011 under the continuing complaint provision of R.C. 5715.19(D):

> If a complaint filed under this section for the current year is not determined by the board [of revision] within the time prescribed for such determination [90 days], the complaint and any proceedings in relation thereto shall be continued by the board as a valid complaint for any ensuing year until such complaint is finally determined by the board or upon any appeal from a decision of the board. In such case, the original

> complaint shall continue in effect without further filing by the original taxpayer, the original taxpayer's assignee, or any other person or entity authorized to file a complaint under this section.

{¶ 23} As the BOR did not render its decision within 90 days from the filing of the BOE's complaint for tax year 2009, the continuing complaint provision applied to confer jurisdiction to review property values in later years through final determination on appeal. *AERC Saw Mill Village, Inc. v. Franklin Cty. Bd. of Revision,* 127 Ohio St.3d 44, 2010-Ohio-4468, ¶ 14. However, when pursuant to statutory duty, the county auditor conducts a reappraisal, such as the sexennial reappraisal pursuant to R.C. 5715.33, a previous year's valuation does not "carry over."[4]

> [W]hen the auditor performs a new valuation pursuant to a separate statutory duty for any year subsequent to the filing of a valuation complaint, that newly determined value constitutes the value for that year. Moreover, that new value can be displaced only by a showing that some other value is correct.

*Id.* at ¶ 32. *See Sheldon Rd. Assoc., L.L.C. v. Cuyahoga Cty. Bd. of Revision,* 131 Ohio St.3d 201, 2012-Ohio-581, ¶ 24, fn. 1 ("The auditor's duty to conduct a reappraisal would ordinarily preclude carrying over the previous year's valuation."); *Columbus Bd. of Edn. v. Franklin Cty. Bd. of Revision,* 87 Ohio St.3d 305 (1999) (auditor's standard 5 percent markup in triennial update year upheld regardless of carryover provision but applied to redetermined base value for previous interim); *Cincinnati School Dist. Bd. of Edn. v. Hamilton Cty. Bd. of Revision,* 74 Ohio St.3d 639, 642-43 (1996) ("the filing of a valid new complaint in the second triennium stops, for the tax year at issue and succeeding years, the automatic carryover of the value determined under a prior complaint").

{¶ 24} The BTA reasonably and lawfully decided to displace the auditor's new valuation for 2011 upon the showing that the September 2009 sale price was the correct value for 2011. The sale occurred within 24 months prior to the January 1, 2011 tax lien

---

[4] The carryover provision of R.C. 5715.19(D) reads: "Liability for taxes and recoupment charges for such year and each succeeding year until the complaint is finally determined and for any penalty and interest for nonpayment thereof within the time required by law shall be based upon the determination, valuation, or assessment as finally determined."

date and, therefore, within the limit the Supreme Court recently prescribed for application of the judicial presumption of recency where the auditor has conducted an intervening statutory appraisal. *Akron City School Dist. Bd. of Edn. v. Summit Cty. Bd. of Revision,* 139 Ohio St.3d 92, 2014-Ohio-1588, ¶ 26 ("We hold that a sale that occurred more than 24 months before the lien date and that is reflected in the property record maintained by the county auditor or fiscal officer should not be presumed to be recent when a different value has been determined for that lien date as part of the six-year reappraisal.").

{¶ 25} While appellant attempted to rebut the presumption of an arm's-length transaction from the outset, it has made no argument that its purchase of 2195 Riverside Drive was not recent—that is, "within a reasonable length of time, either before or after the tax lien date" of January 1, 2011 under former R.C. 5713.03. The BTA properly applied the presumption of recency and correctly ordered the 2011 value of parcel 070-011802 to be based on the September 2009 sale price of $2,000,000. In *Akron City School Dist.,* the Supreme Court observed that "[i]n conducting the reappraisal, the sale price should be used if the sale was 'within a reasonable length of time, either before or after the tax lien date.' " *Id.* at ¶ 24, quoting Ohio Adm.Code 5703-25-06(F). The BTA reasonably and lawfully displaced the reappraisal value on parcel 070-011802 for 2011, as it properly valued appellant's property using the September 2009 sale for tax year 2011, and for the previous two years as well. Accordingly, we overrule appellant's second assignment of error.

## IV. Conclusion

{¶ 26} For the reasons set forth in this decision, we overrule both of appellant's assignments of error and affirm the order of the Ohio Board of Tax Appeals.

*Order affirmed.*

KLATT and DORRIAN, JJ., concur.